### AMELIA HALL v. CITY OF AUSTIN.

Decided December 7, 1898.

**1. Highway by Necessity.**

A right of way by necessity, over the land of another, can not rest upon any ground of mere convenience. See facts held not to justify the submission of an issue as to such right.

**2. Highway—Prescription.**

The continuous use by the public for more than ten years of a road along a mountain valley defining its course by natural limits, though it ran through an unfenced country and had never been laid out or recognized by the authorities as a public road, is sufficient to demand the submission of the right of those using it to a highway by prescription.

**3. Same—Case Distinguished.**

Such case distinguished by its facts from that of Cunningham v. San Saba County, 1 Texas Civil Appeals, 480, where the road ran over uninclosed prairie and was confined to no definite limits.

**4. Prescription—Adverse Claim.**

A highway by prescription may be established without other evidence of the assertion of adverse claim than that afforded by the nature of the use.

**5. Highway by Prescription—Individual Right.**

An individual may assert a prescriptive right in a public easement and recover damages for interference with it.

**6. Damages—Overflow—Easement.**

The measure of damages for permanently overflowing plaintiff's land and obstructing his prescriptive right of way by water cast upon it by erecting a dam, was the value of the land submerged, and the depreciation in the value of the remainder by the destruction of the road.

APPEAL from Travis. Tried below before Hon. R. E. BROOKS.

*John Dowell,* for appellant.

*T. B. Cochran,* City Attorney, for appellee.

FISHER, CHIEF JUSTICE.—The nature and character of this action is correctly stated in the charge of the trial court, which is as follows:

"This is a suit by Amelia Hall, joined by her husband Sidney Hall, as plaintiffs, against the city of Austin, as defendant, to recover dam-

ages alleged to have been inflicted upon plaintiffs by defendant having erected a dam across the Colorado River and destroyed plaintiff's means of egress from her premises, situated on the west side of the Colorado River, and the value of which is alleged to have been destroyed by defendant's having destroyed the roadway to said premises, for which plaintiff sues.

"The defendant denies the allegations of plaintiff.

"The plaintiff alleges that the roadway leading to said premises was a public roadway, made so by long continued use by the public for a road for more than twenty years.

"The plaintiff also alleges that she had a right to said roadway by reason of the doctrine of necessity, and that the erection of said dam caused the waters of said river to submerge a portion of plaintiff's land, for which she also sues.

"You are instructed that there being no evidence before you that the road leading from plaintiff's premises was a public road, except its long continued use as such by the public,. and the working of the same by parties using it, and such land being uninclosed lands, such evidence is not sufficient to warrant the jury in finding said road was a public road. Neither is the evidence sufficient to warrant the jury in finding that plaintiff had a right of way over said road under the doctrine of necessity; you can not, therefore, find for the plaintiff for damage to her said premises by reason of the destruction of said roadway.

"Upon the question of damages to said premises by submerging or overflowing any part thereof by the back waters from said dam, you are instructed:

"That if you believe from the evidence that the defendant erected said dam, or caused same to be done, and that the waters of said Colorado River were thereby caused to submerge or flood plaintiff's land or any part thereof, then you will return a verdict for the plaintiff for the reasonable market value of the land so flooded or submerged, if any, at the time it was so flooded, with 6 per cent interest from that date to the present. And unless you do believe from the evidence that the land of plaintiff, or some part thereof, was flooded or submerged by the back waters in Bee Creek, caused by the erection of said dam and the obstruction of the Colorado River, you will return a verdict for the defendant.

"The burden of proof is on the plaintiff to show by a preponderance of the evidence the facts which entitle her to recover. The jury are the exclusive judges of the facts proven, the credibility of the witnesses, and the weight to be given the testimony, but must receive the law from the court and be governed thereby."

In response to the issues submitted, the jury returned a general verdict in favor of defendant.

It appears from the facts that the appellant, Amelia Hall, with her husband, was residing on their farm, located on Bee Creek, from 1886 to the spring of 1893, when the city of Austin completed its dam across the Colorado River, thereby causing the water to back up Bee Creek and

submerge the road that was in use by the plaintiffs in going to and from their place of residence.

In October, 1886, they purchased this place from one Peel, who prior to that time resided there. The plaintiff's vendors purchased this place from one Taylor, who at that time and subsequent owned much of the land from there to the Colorado River over which the road in question ran; but the testimony does not show that he owned all of the land extending from the river to the appellant's place.

In the spring of 1893, the city erected a dam across the Colorado River below the mouth of Bee Creek, up which the road in question extended to the plaintiff's residence. The construction of this dam caused the water to flow up the creek and submerge the road for much of the distance from the river to the plaintiffs' residence, which was west of the river about a mile and a half or two miles; and the back water also destroyed the ford over the Colorado River where this road crossed, connecting with the road on the east side of the river extending to the city of Austin.

There is evidence which shows that the ford across the Colorado River and the road extending up Bee Creek to the plaintiff's place had been in use by the public since 1870, and that it was so continuously used up to the time it was obstructed by the dam in question. The main purpose for which the road was used was for hauling wood and timber out of the mountains on the west side of the river.

Upon the question of use, G. J. Taylor testified: "I know Mr. Hall's place (meaning the appellant). That place belonged to my father. I think this land of Hall's is a part of a tract which my father sold to Mr. Peel, who afterwards sold to Hall. I know this road from Hall's down to Bee Creek, crossing at the ford. I have known the road since about 1870. It has been a public road as long as I have known it, and used continuously by the public. I think the road was there before my father owned that place. We came there about 1870 and the road was there then. My father acquired that land from different parties. mostly from Chambers. There were several surveys over there. We sold ties and wood off that land."

Witness Krause testified: "I am acquainted with the road that ran down Bee Creek and crossed at the ford at the mouth of Bee Creek. I first became acquainted with that road when the Houston & Texas Central road was built into Austin. I think that was in 1871. I had a contract to haul railroad ties, and had some teams and hauled ties from up there. At that time the road was used by the public. I used to meet a good many wagons coming to town. The road was used by anybody who wanted to use it. From 1871 it was used by the public up to the time the water was turned on the dam. The road began at the city of Austin, ran out Pecan Street right by my house, and then on this side of Walsh's. Above the Cook tract the road turned down to the river and crossed the river at Bill Walsh's. It was a continuous road from the city to Hall's place. I know where Hall's place is and where Bee Creek Smith

lived. There is now no road from Hall's house. His place is surrounded by mountains. He can't get in and out, because he has no road. I know that the road was worked. I was road overseer for a number of years as far as the river on this side of the river. I was road overseer two or three times. I worked the road as far as the ford. I had nothing to do with the road on the other side of the river. I think I was road overseer two terms when Brackenridge was county judge and one term under Von Rosenberg. That was before the construction of the dam. I worked that road as a public road. The road came from Hall's house down Bee Creek and connected with West Pecan Street."

Witness Haskell testified: "I know the road that comes down Bee Creek and crosses at the ford. As near as I can come to it, I have been knowing that ford about eighteen or nineteen years. As long as I have been knowing it, it has been a public road. I have been using it as such that length of time, and have been working it much of the time. It has been used by the public or anybody who wanted to use it. I could not tell you exactly how long it has been since I worked that road, but I have worked it. We would work it every year. Sometimes we would work it in betwixt times. I suppose I worked it as a public road. To my knowledge, that road has been used uninterruptedly by the public until the water was turned on the dam. After this road was cut off, Mr. Hall didn't have any other way that I saw to get in and out of his place with a wagon. I have hauled a great deal from his land, working for P. C. Taylor, and I never saw any other place where he could haul a loaded wagon from his place."

There is testimony of other witnesses showing that the road was used as a public road for many years prior to the erection of the dam, and that it had been frequently worked and put in repair. And there is much evidence in the record, in fact the weight of the testimony upon this subject shows, that the road in question ran for much of the distance from the Colorado River, up the bed of Bee Creek, and for part of the way between the creek on the one side and the hills or mountains on the other; and from the plaintiff's place to the ford on the Colorado River the road was, by reason of precipitous mountains or hills upon each side, confined to a limited and narrow space; that there was no other accessible way, in the use of wagons and teams in and out to the plaintiffs' place, except the road up Bee Creek. The precipitous hills and mountains on each side of the road for the entire distance from the ford to the plaintiffs' residence, confined the public in the use of a road extending up Bee Creek to a very confined and narrow space.

It is also shown by the evidence that the use by the public of the road in question from the beginning, which is traced back as far as 1870, was continuous and uninterrupted to the time of its obstruction by the dam erected by the city. It does not appear that the county ever laid out or established the road in question or appointed an overseer therefor, or that it was ever worked under the direction of the county authorities.

The appellants contend, as one of the grounds of error relied upon,

that the charge of the court was erroneous, because the facts show that they acquired an interest and right in the road and ford in question under the doctrine of necessity.

We do not believe that there was any error in the peremptory instruction of the court upon this question. The doctrine of necessity means just what it says: The right to the road must arise by reason of the absolute necessities of the claimant; and the facts upon which this right may be made to depend must establish that the existence of the road is absolutely necessary as a means of ingress and egress to the plaintiffs' premises. The right can not rest upon any ground of convenience. And we believe that, upon this issue, the most that can be said of the evidence is that it establishes that it would put the plaintiffs to much expense and inconvenience to establish a road leading from their premises, connecting with other public roads, that would give him an outlet; and, as said in Alley v. Carleton, 29 Texas, 78: "A way of necesity, however, must be more than one of convenience, for if the owner of the land can use another way, he can not claim by implication the right to pass over that of another to get to his own."

The appellants by proper assignments of error also contend that the court erred in refusing to submit to the jury the issue as to whether, by reason of the facts as stated, the plaintiffs did or not acquire a prescriptive right to the road and ford in question.

We believe there is much force in this contention, and for the refusal of the court to submit this issue to the jury the judgment will be reversed and the cause remanded. It is true the facts in the record do not show that the commissioners court or public authorities who may have had control over public roads, ever recognized the road and ford in question as a public highway; but the facts trace a user of the ford and road in question upon the part of the public generally, to 1870, a much longer time than would be necessary, so far as the element of time alone is concerned, to vest an easement in the public.

The evidence tends to establish an unequivocal and continuous use upon the part of the people generally who were called upon to use that road, of a character sufficiently certain and definite in its nature to impress the belief upon the owner of the fee, as well as others who may have knowledge of the facts surrounding the use of the road, that it was the purpose and intention upon the part of the public to establish a public road by use. And it is clear from the manner in which the road was used, and the narrow confined space to which it was limited by reason of surrounding mountains, that the owner of the fee must have been put upon notice that the public had selected this particular route as a road to be used by it, and that if such use and possession was not interrupted, it would in time ripen into a prescriptive right.

It is true one of the essential qualities of prescription is that the use must be adverse. That is, the use must have invaded some right of the owner, which he could have asserted by action, and must be of a character which negatives simply a permissive use or license. It is contended,

in response to this proposition, that no claim was ever asserted by the county, nor was a claim ever asserted by the plaintiffs or their vendors in the road in question. Adverse possession, accompanied with use, does not solely rest upon the claim asserted by word of mouth; but the right as asserted may arise from the circumstances connected with the use and possession of the property. Converse v. Ringer, 6 Texas Civ. App., 51.

It is not believed that the burden is more onerous upon one claiming a right by prescription than would be the case where he asserted a right to real property under the ten years statute of limitation. In both cases it must be shown that he is asserting the right adverse to the true owner, and inconsistent with the idea of a permissive use which may be terminated at the pleasure of the owner. But it has never been held that in asserting the right under the statutes of limitation it was necessary for the one in possession to show that he openly, by word of mouth, asserted a right to the property, and that he was holding adversely to the true owner; but, upon the contrary, these facts may be established by the character of the use of the property and the circumstances connected with the possession. And if from a consideration thereof they are sufficient to indicate that the purpose was to claim the right and to assert an adverse use, they should be given that effect, although the possessor or user had not openly declared that such was his purpose or character of claim.

Now it is true in this case that it was not shown that the public or the plaintiffs openly asserted an adverse claim to the road in question to the owner of the land over which it ran, but there are facts in the record which indicate that the public have used that road for a length of time and in a manner which would authorize the issue to be submitted to the jury, whether the use was of a character indicating a purpose to establish a road over the land of the owner adversely to his rights. As said before, the county had not established, by orders usual in such cases, this road as a public one; but the evidence shows a long continued and uninterrupted use by the public, of a character which may confer upon the county the right here asserted, a control over this road. McWhorter v. State, 43 Texas, 666. And if the public, by a prescriptive use, have acquired the right which may ripen into a control by the county, it inures to the benefit of all who may have had an interest in maintaining the road.

The doctrine is well recognized by authority that, as a member of the community, an individual may assert a prescriptive right in a public easement, and if the right is invaded or interfered with in a way which results in injury to the rights or property peculiar to one, which is not suffered by the public generally, he may have his redress for the damages he has suffered.

It is contended that, because the road in question runs over uninclosed land, the doctrine announced by this court in the case of Cunningham v. San Saba County, 1 Texas Civil Appeals, 480, should be given application here. There the road ran over an open, unfenced, prairie country. The effect of that decision is that a use by the public of a road over that

character of land was not evidence of an exclusive appropriation, as the use might be changed from one part of the land to another from time to time, as the exigencies of the occasion might require; in other words, that the use of a road over open prairie land was not of itself sufficient to establish an intention to use one particular or defined route adversely to the owner, and that such use was not inconsistent with the owner's right, but might be considered, by reason of the character of the country over which it ran, that it was simply by the license of the owner that the public were permitted to use it. But the facts in this case clearly distinguish it from the case cited.

It is true that the section of country over which the road in question ran was not fenced, but nature had provided a way which confined the only available route to the plaintiffs' place within narrow limits, with precipitous mountains or hills upon either side. Now the owner of the fee must have known that, in order to reach the section of country to where this road penetrated, it pursued the only practicable and available route; and the designation by the public by use of the route to which they were limited must have put him upon notice that the designation so made by the public was intended to establish a road leading to and from that section of country.

Now if, in open prairie country, the public in using a road should fence it, this would be a visible act of appropriation which would put in motion a prescriptive right from the beginning of such use; and would be evidence of such an adverse appropriation as to put the owner upon notice thereof. What man may have done in the one instance, nature has provided for in the road in question. It has opened, it seems, an only available passway through the mountains, which the public, by reason of their necessities, have taken advantage of, and they have used this way as a road for a length of time more than sufficient to create a prescriptive right. And it is believed that the intention to designate and appropriate would be in this latter instance as certainly established as would be the case if the public had erected a fence upon each side of the road.

For the refusal of the court to submit the issue of prescriptive right growing out of the use of the public, the judgment is reversed and the cause remanded.

So far as it is insisted that a private way is established by reason of a prescriptive right resulting from the use of the plaintiffs as individuals, as contradistinguished to the right based upon the use by the public, we do not think the evidence was sufficient to warrant the submission of this issue to the jury. The use by the plaintiffs only dates back to 1886, and it does not appear for what length of time their vendors used the road prior to that time nor the character and manner of their use, and that, if such use existed, the plaintiffs acquired an easement in the road as an incident to their grant.

If it should be determined upon another trial that a prescriptive right had been established in the road in question, and the plaintiffs have sus-

tained any damages by reason of its obstruction by the back water from the dam, then we believe the measure of damages would be the value of their land that has been submerged, if any, together with the depreciation, if any, in the value of the balance of their land, that was occasioned by reason of the destruction of the road and ford.

Judgment reversed and cause remanded.

*Reversed and remanded.*