### BROWN et al. v. FARWELL. (No. 1335.)

(Court of Civil Appeals of Texas. Beaumont. May 22, 1926. Rehearing Denied June 2, 1926.)

1. **Easements** ⬅➡36(3)—**Evidence held insufficient to establish easement by adverse user.**

Evidence that roadway cut through unoccupied, uninclosed land from plaintiff's premises to public road, used by persons passing in vicinity, was never officially recognized by city as a public road, nor notice given owner of land over which road passed of claim of easement, and that road was not confined to any beaten path, *held* not to rebut presumption that road was used over land of owners with their permission, and hence insufficient to establish easement by adverse user.

2. **Easements** ⬅➡36(3)—**Evidence held insufficient to show notice to owners that right to use their land as road was being asserted.**

Evidence that plaintiff's predecessor cut a few small trees and underbrush to form path from his premises to public road over property of defendants is insufficient to require owners to take notice that right to use land as road adversely to them was being asserted.

Appeal from District Court, Orange County; John Green, Jr., Judge.

Action by F. H. Farwell against Carrie Brown and others, in which defendants filed a cross-action and the City of Orange was made a party defendant. Judgment for plaintiff, and the City of Orange and the remaining defendants appeal. Reversed and remanded.

Holland & Holland, of Orange, for appellants.

Kennerly, Williams, Lee & Hill, of Houston, for appellee.

HIGHTOWER, C. J. This suit was filed in the district court of Orange county by the appellee, Farwell, as plaintiff, against Carrie Brown and others, who are appellants, the appellee alleging, substantially, that the appellants were threatening and were proceeding to close and obstruct a certain roadway by putting a fence across the same, and praying for a temporary injunction to restrain and enjoin appellants from closing the road-

way, and that the injunction be made permanent upon final hearing. It was alleged by appellee, in substance, that the roadway in question had been openly, continuously, exclusively, and adversely used and claimed by appellee and by the public in general as a public roadway for a period of 27 years and more, and that by reason of such open, continuous, exclusive, and adverse use of the road it had become stamped in favor of the appellee and the public in general with the character of a public road, and that the appellee and the public in general had acquired an easement in the road and land over which it runs by prescription under the statutes of ten years' limitation of this state.

Appellee made the city of Orange a party defendant, alleging as his reason for doing so that the roadway in question was a part of the city of Orange, and by adverse user by the people of the city had become one of the streets of the city of Orange, and that if appellants were permitted to close and obstruct the same their acts in doing so would be in violation of the law of this state and of the ordinances of the city of Orange, and prayed that the city of Orange be made a party to the suit in order that it may protect its rights to the street.

Carrie Brown and the other appellants here answered by general demurrer, general denial, and by cross-action, the nature of which becomes immaterial. The city of Orange answered and adopted the allegation of appellees' petition, and prayed for the same relief as was sought by appellee.

The case was tried before a special trial judge, without a jury, and resulted in a judgment in favor of the appellee and the city of Orange, the judgment declaring the road in question to be a public road and highway, and establishing a permanent easement in the same in favor of the appellee and of the city of Orange, and perpetually enjoining appellants from in any manner obstructing the roadway.

From this judgment all the original defendants, with the exception of the city of Orange, who became, in effect, a plaintiff, have prosecuted this appeal, their main contention being that the evidence adduced upon the trial was wholly insufficient to warrant a finding and conclusion by the trial court that the plaintiff and the city of Orange had established an easement in the road or land over which it runs by adverse user. The statement of facts in the case is very voluminous, and we shall not undertake to detail the evidence to any extent, but will state what we think the substance of it all is.

The trial judge, at the request of appellants, filed findings of fact and conclusions of law, but it is apparent that some of his findings, denominated "findings of fact," are but conclusions of law themselves. The findings and conclusions will serve as a sufficient

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

statement showing the character of this controversy. They are as follows:

"Findings of Fact.

"This suit was filed by the plaintiff against the defendants to restrain them from closing a certain roadway across a portion of outlot No. 13, N. Cordray survey, Orange, Tex. The case was tried upon the first amended original petition of the plaintiff, in which the city of Orange was a party defendant. The city of Orange filed its answer adopting, as against its codefendants, the allegations made by plaintiff in his amended petition.

Outlot No. 13 in the N. Cordray survey is somewhat in the shape of a dipper or fan with the handle pointing towards the west with a river forming its extreme western boundary. The road in controversy is located across the extreme western end of said outlot No. 13.

At an early date property owners living north of the Cordray survey used an old road across the western end of said outlot No. 13, near the road in controversy. The old road, through long continued use, became so washed out in the year 1896 that it was no longer practicable to use it as a road. In that year C. H. Grubbs made the road in controversy.

"In the year 1896 Grubbs and his employees cut through virgin timber across the western end of outlot No. 13 in the Cordray survey, made the necessary clearing, and built the road in controversy. Grubbs thereafter regularly used the road made by him to go to and from his home, and allowed the public to use it. C. H. Grubbs used this road from the year 1896 down to the year 1918, when he sold his property lying north of the Cordray survey to the plaintiff. Since that time plaintiff and others have constantly used the road in controversy.

"Grubbs secured no one's permission to either cut the timber, or to make the necessary clearings, or to build the road in controversy. Such preparation and building of the road was not with the consent of the record owners, or any of them, or any one else, but with the intent to use it adversely as a road. Grubbs used this road adversely, without recognizing anybody's right to prevent him from so using it, continually and continuously from the year 1896 until the sale by him of his property lying north of the Cordray survey to the plaintiff, F. H. Farwell, in the year 1918. Farwell since that time had adversely used the road without recognizing anybody's right to prevent him from so using it.

"When the plaintiff, F. H. Farwell, made the purchase from C. H. Grubbs of his land lying north of the Cordray survey, the road in controversy was open and being used by Grubbs and others, and had been so used by Grubbs and others adversely since the year 1896.

"Conclusions of Law.

"I conclude as a matter of law that the plaintiff, F. H. Farwell, is entitled to the relief prayed for by him in his petition as against all of the defendants, and accordingly render judgment in his favor against the defendants restraining them permanently from closing or obstructing the roadway in question, finding as I do that he and his predecesor, C. H. Grubbs, had acquired a prescriptive right to the road through an adverse user from the year 1896 down to the time of the trial of this case, under and by virtue of the ten-year statute. I further conclude as a matter of law that the city of Orange, having adopted the pleadings of the plaintiff as against its codefendants, is entitled to the same relief as against its codefendants, and render judgment accordingly in its favor."

The only question for our determination is whether the evidence adduced upon the trial was sufficient to show that there had been such an open, continuous, exclusive, and adverse use of the roadway in question by the appellee and the public in general as to warrant the court's legal conclusion that a permanent easement in favor of the appellee and the city of Orange had been established in or over the land of appellants across which this roadway runs by prescription under the ten-year statute of limitation.

[1] The evidence is undisputed to the effect that the country through which this road runs is open, uninclosed, unoccupied land, and that such has been its character during all the claimed prescriptive period; that this roadway leads from the premises of the appellee, Farwell, to a public road or highway known as the Orange-Beaumont Highway No. 3, which is but a very short distance from Farwell's premises, and he uses this roadway in going from his premises to the highway and in returning therefrom; that other people in general who have occasion to pass in that immediate vicinity use this roadway leading from Farwell's premises to the Orange-Beaumont highway or road; that this character of use of the road has continued for a sufficient length of time to create an easement by prescription, if the other elements necessary to establish such an easement were present.

The evidence is without dispute that this claimed public road has never been officially recognized by any of the officials of Orange county; that it was never attempted by any of the officials of Orange county to have the same established as a public road, nor does it appear that any road overseer was ever appointed to exercise any jurisdiction over this road, nor does it appear that it was ever worked by any of the citizens of Orange county as a public road. It is also without dispute that the city of Orange has never officially recognized this road as one of its public streets, nor that any claim has ever been made by the city that it was one of the streets of the city, or that the city was entitled to its use as such. The mayor of the city testified expressly that the city of Orange had never at any time recognized this roadway as one of the city's streets, and that no steps were ever taken by the city to have it declared one of the streets, nor were any official acts ever exercised by the city over the same.

The evidence is without dispute that neither the appellee nor any other person ever gave notice of any character, other than merely to travel upon this road, that they claimed or intended to claim an easement in

the same by prescription or otherwise. There is not a particle of evidence in the record to indicate that any one ever notified any of the appellants, owners of the land over which this road runs, that the appellee or any other member of the public intended to claim an easement in this roadway.

The character of the country through which this roadway runs is partly open piney woods country and partly marshy grass and undergrowth, just the same character of country as that which is found in many parts of Orange county. The evidence further shows that this roadway is just such a road as is found around Orange and in that vicinity in many places running through practically the same character of country. There is nothing in the evidence to indicate that the travel upon this road was, by natural objects or otherwise, confined to any well-beaten path or route, but, on the contrary, the evidence does show, without dispute we think, that the character of the country through which this short space of road runs is such that travelers upon it are not confined by anything to any certain pathway or route, but may travel at their will along and near this road in the immediate country through which it runs. It is true that the evidence was sufficient to show that those who used this· roadway never asked the permission of appellants to do so, and therefore the court's finding of fact to the effect that the appellee and his predecessor in title and the public in general had traveled this road without the permission of appellants, or any of them, is true, in so far as it may mean express permission. And while it is true that the court found as a fact that Grubbs, while he owned the premises now owned by Farwell, used and permitted others to use this roadway, the finding is correct in the sense only that Grubbs never objected to such use by others, and that finding of the .court must be construed in that sense. Otherwise, it would mean nothing, for Grubbs could neither grant permission to, nor withhold it from, any one to use this roadway, because he had no right and had never claimed any right to grant or withhold such permission. The "old road" mentioned in the trial court's findings of fact above was used in the same way by people who cared to use it prior to the time it was discontinued, as found by the trial court, but no one, so far as this record shows, had ever expressly asserted any claim of right to use the old road lying near and parallel to this roadway in question, and the land belonging to appellants, and as found by the court, when it became unsatisfactory as a roadway by reason of washouts, it was abandoned, and this new roadway, so-called, adopted as a passway in its stead, and this, as the· evidence in this case shows, is what was done in many instances with many other paths and roads in Orange county. The strongest evidence in this case, and we have gone through the entire statement of facts, indicating in the least any adverse user of this road was the evidence of the witness Grubbs, who testified, among other things, as follows:

"Yes; I defined the course of that road; I blazed it out myself, and had the hands cut out the undergrowth. I remember one batch covered probably one-half an acre of rattan, a tough grass across, and then some small timber from four to six inches. That was cut; that was in the line I blazed out. I had no other road to my place. It was the only road to that place. The old road was first, and then I finally established this road on higher ground."

[2] It appears from this evidence of Mr. Grubbs that he cut a few small trees, which some of the citizens designate "saplings," and some underbrush and vines and some tough grass, in order to serve his convenience in giving him more easy access to the public road a short distance from his premises. Such insignificant trespass as this upon his neighbor's land was wholly insufficient, we think, to cause the owners to take notice or believe that Grubbs or any one else was asserting the right to use this land as a road· adversely to its owners. If such insignificant acts as this would be sufficient to constitute notice to the owners of land that those committing· such acts were claiming a right in the land adverse to the owner, there would be thousands and perhaps hundreds of thousands of roads and paths throughout the rural districts of East Texas, the use of which for this prescriptive period, so far as time is concerned, would stamp the land of the owner with an easement in favor of those who traveled it at will without the owner's objection.

The law of easements by prescription is now well settled in this state, and no useful purpose would be served in entering into a discussion of these abstract legal principles. The facts and circumstances in this case, which the appellees claim were sufficient to warrant the trial court's conclusion that an easement had been established in this roadway by prescription through adverse user, do not destroy or rebut the presumption that this road was used over the land of the owners with the permission of the owners, and therefore it was insufficient to establish an easement by adverse user. Cunningham v. San Saba County, 1 Tex. Civ. App. 480, 20 S. W. 941; Evans v. Scott, 37 Tex. Civ. App. 373, 83 S. W. 874; Nave v. City of Clarendon (Tex. Civ. App.) 216 S. W. 1110; Hall v. City of Austin, 20 Tex. Civ. App. 59, 48 S. W. 53; G. H. & S. A. Ry. Co. v. Baudat, 21 Tex. Civ. App. 236, 51 S. W. 543. The last three authorities are cited by appellees in this case in support of the judgment, but we consider that those cases are so entirely different in their facts from the instant case that they can have no application as authority in support of this judgment. As we read these cases, the reasons given by the appellate court in each of them for the conclusion reached

makes it clear to us that the judgment in this case is not supported by the evidence. We shall not protract this opinion by undertaking to discuss the facts in those cases. We feel certain, after careful consideration of all the evidence in this case and of the authorities that must control, that the trial court has rendered a judgment that cannot be supported by the evidence upon which it purports to be based, and therefore it becomes our duty, which is sometimes an unpleasant one, to reverse the trial court's judgment and remand the cause.