**PHILLIPS et ux. v. TEXAS & P. RY. CO.**
**(No. 795–4803.)**

Commission of Appeals of Texas, Section B.
June 25, 1927.

**1. Appeal and error ⚎987(1)—Court of Civil Appeals had right to reverse judgment not supported by evidence.**

Where the Court of Civil Appeals found that the judgment was not supported by sufficient evidence, it had the right to reverse the judgment.

**2. Appeal and error ⚎1094(5)—Supreme Court cannot review action of Court of Civil Appeals in reversing judgment as not supported by evidence.**

Supreme Court has no power to interfere with the action of the Court of Civil Appeals in reversing the judgment on the ground that it was not supported by sufficient evidence.

**3. Appeal and error ⚎1175(5)—Court of Civil Appeals, reversing judgment as not sustained by evidence, cannot render judgment on conflicting evidence, but must remand cause for new trial.**

Where the Court of Civil Appeals determined that the judgment was not sustained by the evidence and reversed the judgment, it had no power to render a different judgment upon contrary findings on conflicting evidence, but was bound to remand the cause for a new trial.

**4. Appeal and error ⚎1094(1)—Supreme Court held without jurisdiction to determine questions of fact.**

Supreme Court *held* without jurisdiction to determine question of fact as to whether the public had secured a right to the use of a highway by prescription.

**5. Railroads ⚎63—Court may assume railroad built line across road, under general laws.**

In the absence of any proof to the contrary, court may assume that a railroad built its line across a road by virtue of its right to occupy the land of another, under the general laws relating to that subject.

**6. Railroads ⚎69—Railroads acquire easement in right of way, and not fee.**

Railroads, acquiring land for right of way by condemnation proceedings or by grant, acquire only a right of easement, and not a fee in the lands.

**7. Railroads ⚎63—Railroad, using highway crossing for nearly 50 years without objection, acquired prescriptive right as against owners of fee.**

Where railroad occupied a portion of its right of way which was a highway crossing for more than 50 years without objection by any one, it acquired a right to use the crossing by prescription as against the owners of the fee.

**8. Highways ⚎7(1)—Public may acquire by adverse use prescriptive right to highway, though counties have not recognized highway as such.**

The public may acquire the right of way in a highway by adverse use for the prescriptive period, which is ordinarily ten years, though the counties have not recognized the highway as such.

**9. Dedication ⚎5—Highways ⚎1, 23—Public highway may be created by dedication, prescription, or establishment by municipal authority.**

A public highway may be created in three ways: By dedication by the owner of the fee, either express or implied, by use by the public giving a right by prescription, and by the highway being laid out and established by municipal authorities as prescribed by statute.

**10. Highways ⚎1—Prescriptive right to public highway rests on presumption of grant of easement and loss of grant, and it is not necessary to show intent to set apart road to public or acceptance.**

The right to a public highway by prescription rests upon the presumption that the owner of the land granted the easement and that the grant has been lost, and it is not necessary to show intent on the part of the owner to set apart the road to public use, nor to show acceptance.

**11. Highways ⚎6(1)—To create public highway by "prescription," use must have continued uninterrupted under adverse claim of right for full prescriptive period, ordinarily 10 years.**

In order to create a public highway by "prescription," use of the road by the public must have continued uninterrupted under adverse claim of right for the full prescriptive period, which is ordinarily 10 years.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Prescription (in Law).]

**12. Highways ⚎12—Prescriptive right to public highway inures to all who have had interest in maintaining highway.**

If the public by a prescriptive use acquire a right to a highway, which may ripen into control by the county, it inures to the benefit of all who may have had an interest in maintaining the highway.

**13. Highways ⚎17—That railroad delivered ties and wood at highway crossing held immaterial in determining whether public had prescriptive right thereto.**

In determining whether the public had a prescriptive right to the use of a highway crossing over a railroad right of way, it was immaterial that the railroad had used that point as a convenient place to deliver ties and wood.

**14. Highways ⚎17—That railroad maintained crossing, as under the law was required in case of public crossing, for nearly 50 years, was material in determining whether it recognized crossing as public one.**

In determining whether a railroad recognized a crossing over its right of way as a public one, it was material that the railroad maintained the crossing, as under the law it was required to do, whenever its line of railway crossed a public road, for a period of nearly 50 years.

⚎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

15. **Evidence** ☞471(2)—Testimony that railroad merely permitted public to use crossing, claimed to be public crossing, by prescription, held merely opinion without weight, in absence of evidence of affirmative action evidencing permission.

In the absence of evidence of affirmative action by railroad evidencing that it permitted the public to use crossing, claimed to be public crossing, by prescription, testimony of its agents that the railroad merely permitted the public to use the crossing *held* merely opinion, and not entitled to any weight.

16. **Railroads** ☞63—Court may assume railroad legally obtained right to build on portion of right of way, which was highway crossing.

In the absence of any testimony on the subject, the court may assume that a railroad legally obtained from the owner of the fee the right to construct and maintain its railroad on the portion of its right of way, which was a highway crossing.

17. **Railroads** ☞69—Court cannot assume railroad acquired other rights to highway crossing than law entitled it to demand.

In the absence of any testimony on the subject, the court cannot assume that a railroad acquired from the owner of the fee other rights to the portion of its right of way which was a highway crossing than those which the law entitled it to demand from him.

18. **Railroads** ☞69—Court may not assume railroad acquired from fee owner right to forbid public to use as public way highway crossing.

In the absence of any testimony on the subject, court may not assume that a railroad acquired from the owner of the fee the right to grant or withhold from the public permission to use as a public way a portion of its right of way which was a highway crossing.

19. **Highways** ☞7(1)—Public use of land as highway by permission of owner gives no prescriptive right in absence of consent by owner to use by public as matter of right.

The use by the public of the land of another as a highway by license or permission of the owner affords no basis for prescriptive right to public highway in the absence of consent by the owner to the use of the land by the public as a matter of right.

20. **Railroads** ☞102(10)—Landowner, seeking injunction to compel maintenance of highway crossing over railroad and damages for wrongful obstruction of crossing, had burden of proof.

In a suit for injunction to compel railroad to open and maintain a highway crossing over its track and right of way and for damages for wrongful obstruction of the crossing, plaintiffs had the burden of establishing the material allegations in their petition.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by J. T. Phillips and wife against the Texas & Pacific Railway Company. Judgment for plaintiffs was reversed and a judgment rendered by the Court of Civil Appeals (289 S. W. 697), and plaintiffs bring error. Judgment of the Court of Civil Appeals affirmed in part and in part reversed. Judgment of the district court reversed, and cause remanded to the district court.

Allen & Perfect, of Paris, for plaintiffs in error.

T. D. Gresham and R. S. Shapard, both of Dallas, and Head, Dillard, Smith, Maxey & Head, of Sherman, for defendant in error.

SHORT, J. The following statement by the Court of Civil Appeals sufficiently outlines the subject-matter of this suit:

"J. T. Phillips and his wife sought by injunction to compel the railway company to open and maintain a crossing over its track and right of way at a point about three miles east of Detroit and near to their farm, they claiming to have acquired a right by prescription to the continued use of the particular crossing as a road or passway. The plaintiffs' claim was founded solely on the allegation that they had acquired an easement in a particular roadway, running north and south from and through their land, and over the right of way and track of the railway company, to public highway No. 5, and which was completely obstructed and destroyed by the closing of the railway crossing in question, and that they had acquired this easement by prescription. They did not claim that they had no other means of access to the public highway than this way. There are other ways that the plaintiffs can use to reach the highway. Special damages were also asked for in virtue of alleged wrongful obstruction of a right of way. The railway company specially denied any right in the plaintiffs by prescription, or otherwise, to use the track and right of way as a passway or roadway. The defense is founded, in effect, upon the claim that the crossing was established and maintained for the railway company's own convenience, to the knowledge of the public and the appellees. The case was submitted to the jury on special issues, and in keeping with the verdict the court entered judgment granting a mandatory injunction, directing the railway company to open and maintain the crossing, and awarding the plaintiffs the sum of fifty dollars as special damages. The railway company timely requested a peremptory instruction, which was refused by the court."

The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for the defendant in error. 289 S. W. 697.

The further statement of the Court of Civil Appeals dealing with the testimony is in accordance with the statement of facts, which we have read, except the following statement, which, we think, is without support in the testimony, to wit:

"Prior to the construction of the railway, and for some time since, the precise date not given, there was no road, public or private,

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes ·

running east and west with or near the railway line at this place."

An inspection of the statement of facts shows that there was such road running east and west, though the testimony further shows that in recent years there had been constructed by the county authorities a public highway, running east and west, parallel with the railroad track.

[1-3] The defendant in error asked for an instructed verdict after the testimony had been closed, and the trial court having denied this request, upon proper saving of the question and appeal to the Court of Civil Appeals, this action of the trial court was concluded to have been error. The Court of Civil Appeals, having found that the judgment in favor of the plaintiffs in error rendered in the district court was not supported by sufficient testimony, clearly had the right to reverse the judgment, and with this action of the Court of Civil Appeals this court has no power to interfere. "It was within the province of that court to set aside the judgment upon its disapproval of the verdict upon any of the material issues, as it did, but it was not within its power to render a different judgment upon contrary findings." Hudson v. St. Louis Southwestern Ry. Co. of Texas (Tex. Com. App.) 293 S. W. 814. Upon the issues made by the pleadings there was evidence both ways, and this evidence is of that nature and character which would justify a jury or court in passing upon them to find one way or the other. The Court of Civil Appeals, having determined that the evidence was insufficient to support the judgment, was under the duty to remand the cause for another trial. Taber v. Dallas County, 101 Tex. 241, 106 S. W. 332.

The first assignment of error is that:

"The court erred in its conclusion that the evidence did not support the verdict of the jury and the judgment of the court and in reversing and rendering the judgment for the appellant."

This assignment we sustain, and in doing so do not think it necessary to quote from the statement of facts.

The testimony does show that the plaintiffs in error owned 110 acres of land in a rectangular form which they purchased in 1901 while the land was in the woods. However, at the time they purchased it the railroad, which had been built in 1875, lay immediately to the south of the south boundary line of the 110 acres, and plaintiffs in error built their residence near the south line, about 40 feet away from the north boundary line of the right of way of the railroad. At the time the railroad was built, there was a road running north and south at right angles with the line of the railroad, which ran east and west, crossing the railroad and extending north to another road through the 110 acres and extending south a few yards into another road. Plaintiffs in error built their fences and cleared their lands with reference to this road, leaving a lane extending from the road running east and west south of the railroad crossing across the railroad and through their lands northward to another road. There were also branches from this road running north to several mills. The date and authority by which the road was established is not definitely shown by the testimony. It is shown, however, that it was so far in the past beyond 1875, when the railroad was built across it, that the public had generally recognized it as a passageway through that part of the country, which was mostly woodland at that time. It is clear that the railroad could not have created this passageway, since it existed many years before the railroad was built. The testimony shows further, beyond dispute, that up to about August 1, 1923, and as far back as nearly 50 years, the public used this road as occasion required. The plaintiffs in error used it from the time they purchased the land, which was in 1901, up to 1923, a period of 22 years.

While the facts in the case of Compton v. Waco Bridge Co., 62 Tex. 715, are much more satisfactory than the facts in this case as to the origin and extent of the user, still the opinion in that case correctly states the law applicable to the facts in this case. In that case there was no formal designation by the commissioners' court or the city of Waco of the way in controversy. In that case it is said:

"Even before the earliest settlement by white men it seems that the Indians, while yet their camp fires blazed along its banks, had by use established this as a ford, where the tribes crossed and recrossed the Brazos at will. And when the Indian, obedient to his fate, moved on toward the setting sun, and the white men settled the country, this ford was continued, and continuously used as a public crossing, interrupted only by high water, until 1876. It would seem that the public by constant use had secured a right to this ford, by presumptive dedication, and also by prescription."

[4-7] So, in this case, for some years, the number not being certain but possibly as long as 10, before the railroad was built across this roadway the public by use had established it as a way and may have secured a right by prescription to this use of this particular way. This, however, is a question of fact over which this court has no jurisdiction. The record does not show that the defendant in error owned the fee to its right of way. In the absence of any affirmative proof to the contrary, it may be assumed that the defendant in error at the time it built its line across this road did so by virtue of its right to occupy the land of another under the general laws relating to that subject. In this state railroads acquire the right of easement only under condemnation proceedings or by grant, and do not acquire the fee in the lands which

it occupies. Under the undisputed testimony in this case, the defendant in error would clearly have acquired the right to use the crossing of this road by prescription as against the owners of the fee, since it had occupied this crossing without objection by any one from 1875 up to the time this suit was instituted, a period of nearly 50 years. Texas & Pacific Ry. Co. v. Gaines and wife (Tex. Civ. App.) 27 S. W. 266; Franklin v. Brooks, 68 Tex. 681, 5 S. W. 819; Click v. Lamar County, 79 Tex. 124, 14 S. W. 1048; Railway Co. v. Wilson, 83 Tex. 156, 18 S. W. 325.

[8] In this case, the defendant in error is not shown to be the owner of the land. It is shown to have had the right to occupy it for railroad purposes, even in the absence of any express grant to it by one having the power to make the grant. It had acquired an easement over it by prescription. Likewise, the public may by adverse use for the prescriptive period, which is ordinarily 10 years in this state, acquire the line of highway in a road though the counties have not recognized it as such. In Evans v. Scott, 37 Tex. Civ. App. 373, 83 S. W. 874, it is said:

"The public's right of prescription to a highway is not dependent upon the recognition of that right by the municipal authorities of the county, but is acquired by adverse use for the time and in the manner prescribed by the rules of law." Porter v. Johnson (Tex. Civ. App.) 151 S. W. 601.

### [9-11] In the case last cited it is said:

"It is well settled that a public highway may be created in three separate and distinct ways, namely, by dedication by the owners of the fee, either express or implied, 'by long use by the public, carried on in such a manner and persisted in for such a length of time as to give a right by prescription or limitation,' by being laid out and established by the municipal authorities in the manner prescribed by statute. * * * A right by prescription rests upon the presumption that the owner of the land has granted the easement, and that the grant has been lost. It is not necessary in the latter case to show intent on the part of the owner of the land to set apart the road to public use, and the element of acceptance is not involved. Adverse use of the road for the length of time required by the public is the foundation upon which the claim rests. This use must have continued uninterrupted under adverse claim of right for the full prescriptive period, which in this state is 10 years."

### [12] In Evans v. Scott, supra, it is said:

"If the public, by a prescriptive use, have acquired the right, which may ripen into control by the county, it inures to all who may have had an interest in maintaining the road." Hall v. City of Austin, 20 Tex. Civ. App. 59, 48 S. W. 53.

[13, 14] The defendant in error and its servants, as well as the plaintiffs in error, during all this time when this passageway was so used, constituted a part of the public. The fact that the defendant in error used this particular point as a convenient place to have delivered ties and wood is not material. But the fact that it did maintain a crossing, as under the law it was required to do, wherever its line of railway crossed a public road, at this point from the time it was built up to 1923, a period of nearly 50 years, might have much probative force with the jury in passing upon the question whether the defendant in error recognized this crossing as a public one.

[15] The testimony is all one way that the defendant in error at no time until 1923 attempted to exercise any control over the public in using this particular roadway which crossed its right of way. There is some testimony by some of the agents of the defendant in error that the latter merely permitted the public to use this crossing. But, in the absence of some affirmative action evidencing this permit, this testimony was not entitled to any weight and is merely an opinion of the witness. Moreover, in the absence of affirmative proof that the defendant in error owned the right to grant or withhold such permit, it would have no authority to either grant or withhold a permit to the public. Ramthun v. Halfman, 58 Tex. 551.

[16-18] In the absence of any testimony on the subject, it may be assumed that the defendant in error legally obtained from the owner of the fee the right to construct and maintain its railroad for the purpose of carrying on its business across the strip of land involved in this controversy. However, in the absence of any testimony on the subject, it cannot be assumed that the defendant in error acquired from the owner of the fee any other rights except those which the law entitled it to demand from the owner of the fee. This right so presumably acquired by the defendant in error was a mere easement to use the strip of land for its legitimate purposes as a public carrier and measured by the law applicable to such a situation. Assuredly, in the absence of testimony on the subject, the defendant in error did not acquire from the owner of the soil the right to grant to, or withhold a permit from, the public to use this strip of land as a public way, since the law protects the defendant in error against the use by the public of road crossings so as to interfere with the right of the defendant in error to use the same for legitimate purposes.

The theory upon which the plaintiffs in error rest their right to recover in this case is that the public had obtained a right to use this strip of land, subject to the rights of the defendant in error, by prescription, at the time the defendant in error some time in August, 1923, fenced its right of way at this point and thus closed up the way. Evidently the plaintiffs in error's cause of action is based upon the legal fiction that the owner of the fee had granted the public this right, but that the evidence of the grant had been lost.

The owner of the fee not being a party to this transaction, except in so far as the rights acquired by the defendant in error from him are affected, and since these rights under the facts of this case are not shown to include the right to give or withhold a permit to use this way by the public, many questions presented in the briefs of the parties, in view of what we have said, need not be discussed by us.

[19] In 37 Cyc 35, it is said:

"Mere uses of another's land by the public as for a highway is insufficient of itself to establish a highway by prescription. The user must be adverse and hostile to the rights of the owner and under color or claim of right so to use land. A user by license or permission of the owner of the land sought to be impressed with a public easement of travel is not adverse, and affords no basis for prescription, where the owner does not consent to the user of his land by the public as of right. In order to create a highway over lands by prescription the public user must be exclusive; that is, it must be such as to show a claim of right to use the land as a highway to the exclusion of any individual right of the owner inconsistent therewith."

The central idea of the author of the above quotation is that a public easement of travel over the land belonging to another by a mere user by license or permission of the owner affords no basis for prescription, in the absence of consent by the owner to the use of his land by the public as a matter of right. But usually it is the owner of the land who has the right to withhold or give permission to the public to use his land as a way. And in this case it is not affirmatively shown that the defendant in error is such owner having such right at the time the public began to use the way. So, we conclude that the questions discussed by the parties relating to the right of the defendant to give or withhold a permit to the public to use this strip of land are entirely outside of any issue raised by the record in this case.

The chief issue raised by the pleadings and the testimony is whether the plaintiffs in error as members of the public acquired a prescriptive right to use this strip of land. If this question of fact should be decided against the plaintiffs in error, then the judgment such as was rendered by the trial court in this case would be incorrect. Upon the contrary, the defendant in error would be entitled to judgment that the plaintiffs in error take nothing by their suit. Any testimony legitimately bearing upon this issue, either in favor of it or in opposition to it, would be legitimate and should be admitted by the court for consideration by the jury.

[20] We have carefully examined all the other assignments of error upon which the Court of Civil Appeals did not pass. Some of these assignments should be sustained, while some should be overruled. Several of them are of the nature which will not likely occur upon another trial. Others are shown to be well taken from what we have already said. Likewise, the remainder should be overruled as already indicated in this opinion. The burden of establishing the material allegations in their petition, which we think sufficient to state a cause of action, being upon the plaintiffs in error, unless this burden upon another trial is discharged under the rules of law heretofore enunciated, it will be the duty of the trial court to render a judgment in favor of the defendant in error.

We therefore recommend that the judgment of the Court of Civil Appeals in so far as it reverses the judgment of the district court be affirmed, and that the rendition of judgment by the Court of Civil Appeals in favor of the defendant in error be reversed, and that the cause be remanded to the district court for proceedings not inconsistent with the principles of law announced in this opinion.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.