## FOSTER et al. v. PATTON.
### No. 8421.

Court of Civil Appeals of Texas. Austin.
April 14, 1937.

Rehearing Denied April 28, 1937.

Woodruff & Holloway, of Brownwood, for appellants.

Wilkinson & Wilkinson, of Brownwood, for appellee.

McCLENDON, Chief Justice.

This suit was brought to establish a right of way easement over a tract of land in Brown county. Appellants (plaintiffs below) were the owners of the dominant estate and their tenant, and appellee (defendant below), owned the servient estate. We shall refer to these estates respectively as the Hall tract and the Patton tract. Title to the easement was asserted through prescription. The trial was to a jury upon special issues, all answered favorably to appellants. Judgment non obstante veredicto was rendered in favor of appellee, upon the holding that the evidence was insufficient to establish appellants' asserted prescriptive right. The correctness of this holding is the only question the appeal presents.

The findings of the jury were:

1. "Plaintiffs, their predecessors, agents and tenants, have used substantially the route now used, and shown in the plat and pleadings of the plaintiffs across the defendant's land continuously for ten years or more prior to the 14th day of March, 1935" (date suit was filed).

2. "The use of such roadway for ten years, or more, prior to March 14, 1935, was used by plaintiffs under claim of right to use, as distinguished from mere per-

mission or privilege of use, as between plaintiffs and the owners of the premises across which said roadway extends."

3. "The defendant and her predecessors in title have known, or by the use of ordinary care should have known, for ten years or more, prior to March 14, 1935, that the plaintiffs, their agents and tenants were claiming the right to use such roadway adversely to, or against, any right of the defendant, or her predecessors in title, to stop or forbid such use."

4. "While the plaintiffs, their predecessors in title, tenants and employees were using said road during such period, they were claiming the right to use said road to the exclusion of any rights of the owners inconsistent with the use of said road by plaintiffs, their predecessors, tenants and employees."

Substantially stated, appellee's contentions in support of the judgment are:

1. The evidence conclusively shows that the use of the road by appellants' predecessors in title in its inception was permissive, constituting a mere license or privilege, and therefore was not adverse; and presumptively that status continued, since no notice to the contrary, actual or constructive, was ever given appellee's predecessors in title.

2. The evidence was deficient in that it failed to show that the user was begun and continued for ten years under a claim of right.

3. The asserted user was not adverse or exclusive, but was only permissive, because the evidence showed that the owners of the servient estate, their servants, tenants, and lessees and others also used the road for their own profit and convenience in conjunction with plaintiffs.

4. The evidence failed to show that owners of the Patton tract were not under legal disability against operation of the statute of limitations (prescription) during the prescriptive period.

We will briefly summarize the evidence, viewed most strongly in support of the jury findings.

The Patton tract lies between the Hall tract and the Brownwood-Chapel Hill highway. The Hall tract has no convenient outlet except over the Patton tract. It was purchased in 1899 by Fortson and two of the Hall brothers. Fortson sold his (½) interest to his co-owners in 1906; since which time there has been no change in ownership except through death of one of the Halls. Since about 1922 Foster has been tenant on the Hall tract, using it as a dairy. The evidence very clearly establishes a continuous user by the owners of the Hall tract and their tenants from the purchase in 1899 to the date suit was filed. At the time of this purchase there was a gate in the division fence between the two tracts. From this gate a well-defined road led over the Patton tract to a point on the highway. It is not entirely clear whether the Patton tract was fenced on the highway side at that time. But if not, it was fenced shortly thereafter. There was a gate in this fence leading to the highway, and the roadway between the two gates followed the same course during the entire time of the user (1899 to 1935).

Upon the issue of permission at inception of the user Fortson testified that he had charge of the Hall tract from 1899 to 1914; that he never got anybody's permission to use it; but that he continued to use it under a claim of right to travel over it. M. J. Hall, one of the purchasers in 1899, and still owner of an undivided interest in the Hall tract, testified that upon acquiring the Hall tract they began using the roadway to get to and from the highway; that he never got the consent of any one to use it; that nothing was ever said about the matter; and that they used it "as a matter of course."

The only affirmative testimony of a permissive use was that of Scott, a witness for defendant. His testimony was in substance: His family moved on the Patton place in 1894 and lived there until 1898. Prior to that time there was no gate in Hall-Patton division fence. In 1895 Scott's father and tenants on the Hall tract made a verbal agreement to permit the latter to water their stock in a tank on the Patton tract, and Scott and his father constructed a gate in the division fence for that purpose. After this gate was built people going to and from the Hall tract used that gate and traveled one of two roads leading to two gates at the highway. These gates the witness placed at the present location of two gates, one of which is the gate at the highway to which the roadway in issue leads. The other is about a quarter of a mile to the west. It is to be noted that the gate in the division fence constructed by Scott and his father, was very definitely located.

by this witness'at a point some distance west of the point where the division fence gate in issue was located. Scott was fourteen years old when his family moved on the Patton tract.

Upon the issue of joint user by owners of Patton tract and others, the evidence (from appellants' viewpoint) was in substance: From 1899 to 1917 no one used the roadway except owners and tenants of the Hall tract, members of their families, their employees, and those having business with or visiting them. In 1917 an oil lease was executed covering the Patton tract, and beginning shortly thereafter eight producing oil wells were drilled on the tract. Three of these were very near the roadway in question, two on the east side and one on the west. Drillers and operators of these wells used the highway gate in question, but no part of the roadway except for a short distance (variously estimated at from 40 to 100 feet), at which point a road led off to the right to a power house. There was also testimony that occasionally people from Brownwood would drive in the gate at night and park somewhere in the Patton pasture.

We think the above is a fair summary of the evidence in support of the verdict.

The sufficiency of the evidence to support the first jury finding is not questioned.

■ As stated above, the only affirmative evidence of permissive user was the testimony of Scott. Aside from the fact that Scott was a witness for defendant and the transactions he testified about had taken place some forty years before the trial, his testimony may well be discarded as having no bearing upon the issue, because it related to a use, from a separate gate having no relation to the user in issue.

■ The evidence was clearly sufficient to support the jury findings under the decisions of this as well as those of other jurisdictions. Fact situations analogous to those at bar have been expressly held sufficient to support a judgment in favor of the claimed prescriptive right. Anderegg v. Anderegg (Tex.Civ.App.) 67 S. W.(2d) 1074 (error ref.); Davis v. Meckel (Tex.Civ.App.) 57 S.W.(2d) 622; Boone v. Stephenville (Tex.Civ.App.) 37 S.W.(2d) 842; Hall v. City of Austin, 20 Tex.Civ.App. 59, 48 S.W. 53, 55 (later reversed on other questions. See City of

Austin v. Hall, 93 Tex. 591, 57 S.W. 563, 564).

■ The correct rule we think is stated in 2 Tiffany on Real Property, § 520, as follows: "It is frequently stated that, in order that one may acquire a right by prescription, the user must be under claim of right. Sometimes this requirement is stated as additional to that of the adverseness of the user, and sometimes as explanatory of what the requirement of adverseness means. In whichever way it be asserted, the recognition of such a requirement, like that of claim of title as a prerequisite to the running of the statute of limitations in favor of one wrongfully in possession of land, involves considerable difficulty. It appears to be conceded that this requirement of claim of right does not involve any necessity of a verbal assertion, during the period of user, or a right to exercise such user, and that it is sufficient if an assertion of such a claim can be inferred from the circumstances of the user itself. And so it has been stated that, in the absence of evidence to the contrary, the user of another's land without interruption for the prescriptive period will be presumed to have been under claim of right. This requirement of claim of right thus appears to resolve itself into a requirement merely of a user which will justify an inference or presumption of such a claim, and the only user which can possibly satisfy this requirement is obviously a user 'as of right,' that is, a user unaccompanied by any recognition of a right in the landowner to stop such user. It would be more satisfactory if the courts, instead of asserting that the user must be under claim of right, would assert merely that it must be 'as of right' or would be satisfied with the statement that it must be adverse, which apparently means the same."

■ Other statements of the rule follow:

"The prevailing rule is that where the claimant has shown an open, visible, continuous, and unmolested use of land for the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right, so as to place upon the owner of the servient estate, in order to avoid the acquisition of an easement by prescription, the burden of rebutting this presumption by showing that the use was permissive." Ruling Case Law, vol. 9, p. 781.

"The facts may be established by the character of the use of the property, and the circumstances connected with the possession. If from a consideration thereof they are sufficient to indicate that the purpose was to claim the right and to assert an adverse use, they should be given that effect, although the claimant did not openly declare his purpose or the character of his claim." 15 Tex.Jur., p. 793.

"It is true, one of the essential qualities of prescription is that the use must be adverse; that is, the use must have invaded some right of the owner which he could have asserted by action, and must be of a character which negatives simply a permissive use or license. It is contended in reponse to this proposition that no claim was ever asserted by the county, nor was a claim ever asserted by the plaintiffs or their vendors, in the road in question. Adverse possession, accompanied with use, does not solely rest upon the claim asserted by word of mouth; but the right, as asserted, may arise from the circumstances connected with the use and possession of the property." Hall v. City of Austin, supra.

Passing to the question of joint user by appellee's predecessors in title, it is held in Sassman v. Collins, 53 Tex.Civ. App. 71, 115 S.W. 337, 339 (error ref.): "The use of a way over the land of another is not deemed adverse where the way is also used by the owner of the servient estate; the use by those other than the owner being presumed to be with the owner's consent, and not adverse."

This holding was approved in Callan v. Walters (Tex.Civ.App.) 190 S.W. 829, 833, and Tolbert v. McClellan (Tex.Civ. App.) 241 S.W. 206.

In the Sassman Case the question was clearly not necessary to the decision. The user there was originally under a right of necessity which terminated when the necessity ceased to exist. After which time the statutory period of limitation was not completed.

■ The writer has serious doubts whether the rule (conceding its correctness) was properly applied in the Callan Case. The easement there asserted was claimed under a verbal grant held to be within the statute of frauds. It was held that the user (that of a common stairway) was not adverse because the owner of the servient estate also used the stairway.

Upon this point we quote further from 2 Tiffany on Real Property (p. 2043): "When the owner undertakes to confer upon another a perpetual right of user in the land, but fails to do so in a valid manner, as when he makes an oral grant of an easement, the user of the land by such other in accordance with the terms of the invalid grant cannot be regarded as permissive and in subordination to the rights of the landowner, but is in effect adverse to such rights. Such a case is analogous to that of the possession of land under an invalid conveyance thereof, which is ordinarily adverse to the grantor. The user of the land under such circumstances involves no recognition of any right as remaining in the grantor."

Further quoting from 2 Tiffany (p. 2048): "The mere fact that the owner of the land also passes in the same place or along the same line would not seem in itself sufficient to show that the user is permissive."

■ It will thus be seen that the rule in the Sassman Case is not one of universal application. At most, we think it only a rule of evidence, raising a rebuttable presumption of permission.

■ However that may be, the rule has no application to the case at bar. Use by the owners and others did not begin until 1917, at which time the user had ripened into an easement by limitation. Clearly the fact that thereafter the owner and others also used the roadway could not defeat the easement, the right to which was already perfected.

■ We overrule appellee's fourth contention that the burden rested upon appellants to show that appellee's predecessors in title were not under disability which would prevent running of the statute of limitations. That rule was applied in City of Austin v. Hall, supra, where owners of the servient estates were not parties to the suit. The court expressly limited the holding as follows: "We do not intend to decide what would be the rule if a prescriptive right was claimed as against the defendants in the suit or some person whose title he asserts." As stated in the Callan Case, above: "We see no reason why more proof should be required, as against a defendant to a suit, to establish an easement by prescription than to establish title by limitation in a suit of trespass to try title. In such suit, if there

948

exceptions taking the case out of the statute, they must be pleaded."

It is unnecessary to consider whether appellants met such burden, had it rested upon them.

The trial court's judgment is reversed, and judgment is here rendered for appellants, establishing the easement as prayed for.

Reversed and rendered.