THOMPSON & TUCKER LUMBER CO. v.
PLATT.

(Court of Civil Appeals of Texas. Galveston.
Jan. 29, 1913. Rehearing Denied
Feb. 20, 1913.)

1. ESTOPPEL (§ 30*) — GRANTEES — COMMON
SOURCE OF TITLE.

Defendant, in trespass to try title, was
estopped to deny title of one, under whom both
parties claimed as a common source, to the
certificate under which the land was located.

[Ed. Note.—For other cases, see Estoppel,
Cent. Dig. § 74; Dec. Dig. § 30.*]

2. TRESPASS TO TRY TITLE (§ 41*)—VERDICT
—EVIDENCE.

In trespass to try title, evidence held to
sustain a verdict for plaintiff on the facts.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. §
41.*]

3. APPEAL AND ERROR (§ 1005*)—REVIEW—
VERDICT.

Where a jury refused to find from the evi-
dence adduced that a deed had been executed
and lost, such verdict, approved · by the trial
court, must be affirmed on appeal, if there is
any evidence to support it.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 3860–3876, 3948–3954;
Dec. Dig. § 1005.*]

4. CHAMPERTY AND MAINTENANCE (§ 5*)—
POWER OF ATTORNEY—AGREEMENT TO CON-
VEY LAND FOR SERVICES—"BARRATRY."

A power of attorney, authorizing an at-
torney to sue for and recover land at his own
expense, receiving for his services an undivid-
ed one-half of the land, was not a violation of
barratry law; Acts 27th Leg. c. 57, defining
"barratry," and providing that if any attorney
shall seek or obtain employment in any suit
or case at law, or in equity, etc., he shall be
deemed guilty of barratry.

[Ed. Note.—For other cases, see Champerty
and Maintenance, Cent. Dig. §§ 24–51; Dec.
Dig. § 5.*

For other definitions, see Words and Phras-
es, vol. 1, p. 710.]

5. TRESPASS TO TRY TITLE (§ 40*)—EVIDENCE
—DEEDS—ABSTRACT OF TITLE.

Deeds showing a claim of title in the com-
mon source to a survey in which the land in
controversy was located were admissible to
support plaintiff's claim that the original un-
conditional certificate had been transferred to
such common source, though the deeds were
not in plaintiff's chain of title, and were not
embraced in the abstract of title.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. §§ 55–61; Dec. Dig. §
40.*]

6. NEW TRIAL (§ 104*)—NEWLY DISCOVERED
EVIDENCE.

A motion for a new trial for newly dis-
covered evidence of a fact sustained by prac-
tically undisputed evidence in the case was
properly refused.

[Ed. Note.—For other cases, see New Trial,
Cent. Dig. §§ 218–220, 228; Dec. Dig. § 104.*]

Appeal from District Court, Trinity Coun-
ty; S. W. Dean, Judge.

Proceedings to try title by B. A. Platt
against the Thompson & Tucker Lumber
Company. Judgment for plaintiff, and de-
fendant appeals. Affirmed.

Kenley & Minton, of Groveton, and Lane,
Wolters & Storey and Wm. A. Vinson, all of
Houston, for appellant. C. M. McKinnon
and J. A. Platt, both of Groveton, and Dean,
Humphrey & Powell, of Huntsville, for ap-
pellee.

REESE, J. This is an action of trespass
to try title by B. A. Platt against the Thomp-
son & Tucker Lumber Company, to recover a
tract of 322 acres of land in Trinity county,
being part of the Benj. Ellis, Sr., 432-acre
survey, and for damages for cutting and re-
moving timber therefrom. The defendant
pleaded the general issue and not guilty.
Upon trial with the assistance of a jury
there were verdict and judgment in favor
of the plaintiff for the land sued for, and
damages in the sum of $3,200. Its motion for
a new trial being overruled, the defendant
appeals.

On September 5, 1839, a conditional cer-
tificate for 640 acres of land was issued to
Benj. Ellis, Sr., under the act of January
4, 1839. The unconditional certificate was
issued to Benjamin Ellis, Sr., by the board of
land commissioners of Houston county, March
7, 1842. The unconditional certificate was
located by Benjamin B. Ellis, son of Ben-
jamin Ellis, Sr., and father of plaintiff's
grantors, on 432 acres of land in Trinity
county, of which the 322 acres here involved
is a part, in 1857, and also in 1860 upon 208
acres in Polk county—640 acres in all. Pat-
ent was issued to Benjamin Ellis, Sr., to the
432-acre tract April 13, 1882. The land in
Polk county was patented to Benjamin Ellis,
Sr., October 18, 1861. Benjamin Ellis, Sr.,
emigrated to Texas from Mississippi in 1839,
and settled near old Sumpter in Trinity coun-
ty. He had a large family, consisting of his
wife and 13 children, some of whom were
born after his removal to Texas. Among
the older, if not the oldest, of these children
was Benjamin B. Ellis, who also came to
Texas in 1839. It appears that he was then
a man grown and married. Benjamin Ellis,
Sr., died in 1844, his wife, Hannah, in 1861.
None of the children appear to be living,
though many of their children are still liv-
ing in Trinity and Houston counties. Ben-
jamin B. Ellis married Arrita Adams. · He
died in 1867, and his widow in 1886. They
had four children, three of whom survived
both parents, to wit, S. A. V. Ellis, Frances
G., who married J. A. Brent, Jane F., who
married J. B. Anderson. The fourth, Solo-
mon A. Ellis, survived his father, and was
alive in 1881, but afterwards died, the date
of his death not being given. He was sev-
eral times married, and left several children,
still living.

September 8, 1881, S. A. Ellis executed to
his brother S. A. V. Ellis a deed of convey-
ance to "all my right, interest and claim to
the land interest of the estate of B. B. Ellis,

the same my undivided interest in all the land belonging to the estate of B. B. Ellis, deceased." On December 20, 1909, J. F. Anderson, joined by her husband, J. B. Anderson, and Frances G. Brent, joined by her husband, J. A. Brent, executed and acknowledged in due form of law a power of attorney to C. M. McKinnon, authorizing him "to sue for and recover, to compromise with all adverse claimants, all our lands situated in the counties of Trinity and Polk, which we may own or have an interest in as heirs at law of B. B. Ellis, deceased, and no other, and also to sell all such lands, tenements, hereditaments and real estate whatever that we may own or have an interest in as heirs as aforesaid." This instrument also contained the following: "And in consideration of one dollar to us in hand paid by the said C. M. McKinnon, the receipt of which we hereby acknowledge, and the further consideration of money paid and to be paid by the said C. M. McKinnon for expenses of investigating the title to our said lands and in recovering the same, and the still further consideration of services heretofore rendered and hereafter to be rendered by the said McKinnon in the said premises, we do hereby grant, bargain, sell and convey unto the said C. M. McKinnon, his heirs and assigns, an undivided one-half interest in and to the above-described lands and premises, which he may recover for us by suit or compromise as the case may be."

On February 28, 1910, S. A. V. Ellis executed to C. M. McKinnon a similar power of attorney, but on March 15, 1910, he executed to said McKinnon a special warranty deed, by which there was conveyed all the right, title, and interest of said S. A. V. Ellis in and to the land in controversy in this suit. On said March 15, 1910, C. M. McKinnon, as agent and attorney in fact for Anderson and wife and Brent and wife, under the power of attorney aforesaid, conveyed to B. A. Platt an undivided one-half interest in the land in controversy, and on March 16, 1910, he conveyed to said Platt his (McKinnon's) one-half interest in the land in controversy. On March 15, 1910, S. A. V. Ellis assigned and transferred to said Platt any and all rights of action which the said S. A. V. Ellis might have against any person or corporation for damages done to the land in controversy by reason of timber having been cut and removed therefrom. On April 14, 1910, Anderson and wife and Brent and wife executed a similar instrument, transferring and assigning to said Platt their cause of action for damages for cutting timber. This constituted appellee's paper title of the land, and damages for cutting timber.

Appellee further claimed, and introduced evidence in support thereof, that the ancestor of their grantors, of whom we have spoken as Benjamin B. Ellis, was the same person as Benjamin Ellis, Sr., named in the certificate and patents. On this issue we find that the practically undisputed evidence establishes the fact that this is not true. It is true that the witness J. B. Anderson testifies that Benjamin Ellis, Sr., and Benjamin Ellis are one and the same man, but he shows that he never knew Benjamin Ellis, Sr., and could not have known that the fact so stated was true. On the contrary, the testimony of all of the members of the family, most of them witnesses for appellee, shows conclusively that Benjamin Ellis, the father, and Benjamin B. Ellis, the son, came to Texas in 1839 and settled in the same neighborhood. Benjamin B. Ellis under that name procured a pre-emption of 160 acres. None of the testimony, except the isolated statement of Anderson, lends any support to the contention that the grantee in the certificates and patents was the Benjamin B. Ellis who was the ancestor of appellee's grantors. We think the statement of Anderson, in the face of the adverse testimony, may be discarded entirely, and we find, as the result of the undisputed evidence, that the ancestor of appellee's grantors, Benjamin B. Ellis, was in fact the son of Benjamin Ellis, Sr., the grantee in the certificates and patents.

[1, 2] Another contention of appellee is that if the said Benjamin B. Ellis was not the original grantee in the certificate, by verbal sale and delivery by Benjamin Ellis, Sr., in his lifetime, or his heirs after his death, Benjamin B. Ellis became the owner of the unconditional certificate. To support this contention appellee relied upon a number of circumstances, consisting largely of the continuous, open, and active assertion of ownership of the land by Benjamin B. Ellis, and the nonclaim on the part of the other children of Benjamin Ellis, Sr. From this evidence it appears that Benjamin B. Ellis during his lifetime, and his heirs since his death, have always asserted title to this tract of land in controversy, and to the tract of 208 acres in Polk county located under the same certificate, since the location of the certificates, and that, although the other children and heirs at law of Benjamin Ellis, Sr., many of them at least, lived in the neighborhood of this land, and knew of this claim, they have never at any time, and do not now, dispute it. It is unnecessary to discuss this evidence. The issue was submitted to the jury, and they found in favor of appellee's contention, and this finding is abundantly sustained by the evidence. Therefore we find as a fact that by transfer, either from Benjamin Ellis, Sr., in his lifetime, or his heirs after his death, Benjamin B. Ellis became the owner of the unconditional certificate, and entitled to the land located and patented thereunder. Benjamin B. Ellis was in fact common source of title, the only title claimed by appellants being derived from and

under him, and appellants were estopped to deny his title to the certificate and the land in controversy.

Appellants assert title to the land under a deed from S. T. Robb to Thompson & Tucker, by whom the land was conveyed to them. They also claimed that at some date prior to the conveyance of the land by Robb to Thompson & Tucker, Mrs. Arrita Ellis had by deed conveyed the land in controversy to Robb. This deed, if ever executed, has been lost and was never recorded, and appellants sought to establish its execution by circumstances, after laying proper predicate for the introduction of such evidence. As showing title in Mrs. Arrita Ellis and right to convey, appellants undertook to show by circumstances that at some time prior to her death there had been a verbal partition between Mrs. Ellis and her children, accepted and acted upon by all the parties, whereby they received other lands of the estate, and she took the land in controversy. Appellants also undertook to show that immediately after the death of her husband Mrs. Arrita Ellis administered upon the community estate of herself and her deceased husband, as survivor of the community, in the probate court, by filing inventory, giving bond, etc. The probate records of the county had been destroyed by fire in 1872, after this was alleged to have been done.

All of these issues were submitted to the jury in an appropriate charge. Upon these issues, in deference to the verdict, as we understand it, we find: First. The evidence shows that Mrs. Ellis did, as claimed, regularly administer upon the community estate in the probate court, as survivor of the community, in full compliance with the law, and we so find. Second. While the evidence is sufficient to support a finding that there had been a verbal partition as claimed, whereby Mrs. Ellis was to take the land in controversy as her share, it is not sufficient to compel such finding. A different conclusion might reasonably have been arrived at, as was evidently done by the jury, and we therefore find that the evidence fails to show such partition. Third. While the circumstances relied upon by appellants and established by the evidence were sufficient to justify the finding by the jury that Mrs. Arrita Ellis had sold and conveyed the land in controversy to S. T. Robb by written deed which had never been recorded, and has been lost or destroyed, these circumstances do not conclusively establish this fact. The issue was properly submitted to the jury, and we cannot say, either that their finding is without evidence to support it, or that it is against the weight and preponderance of the evidence to that extent that we would be authorized to find differently. We therefore find that appellants failed to establish this sale and conveyance.

Appellants, as we have stated, claimed title under this alleged lost and unrecorded deed as their sole source of title. The evidence was sufficient to support the verdict as to the amount and value of the timber cut and removed by appellants. No question is made as to this by appellants on this appeal. The patent to the 432 acres was delivered to S. T. Robb, who paid the $6 patent fees. Whether he was acting for himself or as agent or attorney for the Ellises in this matter is not shown.

As the verdict was a general one, appellants by appropriate assignments of error assail the same upon each of the several grounds upon which it might have been rested.

By the first assignment of error appellants attack the verdict on the ground that the undisputed evidence, or the overwhelming preponderance of the evidence, shows that Benjamin Ellis, Sr., and Benjamin B. Ellis were different persons; that is, that Benjamin B. Ellis was not the grantee in the certificates and patents. As has been shown in our fact findings, we agree with appellants in this. The bare isolated statement of J. B. Anderson that these two names referred to the same individual, considering the witness' evident lack of means of knowledge, and the positive statement of all the other witnesses, children of Benjamin B. and grandchildren of Benjamin Ellis, Sr., cannot be said to have any probative force, and this assignment must be sustained. We are of the opinion, further, that this witness in using the senior did so with reference to the fact that there were then living Benjamin B. Ellis and also a nephew of the same name. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059. This, however, does not affect the verdict and judgment. It is very doubtful, in fact, that the jury intended to, or did, find that these two names referred to the same individual. It was not necessary that they should have done so in order to return a verdict for appellee, and we are persuaded, in view of the evidence, that they did not so find.

Under the second and third assignments of error appellants present the contentions: First, that there is no evidence showing or tending to show that Benjamin Ellis, Sr., in his lifetime, or his heirs after his death, transferred the certificate in question to Benjamin B. Ellis; and, second, that the great preponderance of the evidence showed that this was not done. These assignments must be overruled. Giving full force to what is said in Shifflet v. Morelle, 68 Tex. 382, 4 S. W. 843, that the mere possession of the certificate is not evidence of title in the possessor, there is much more in the evidence than the statement of the witness J. B. Ellis that the certificate "was turned over to Ben and old man Adams, and they located it down here somewhere." The evidence conclusively shows that up to his death Benjamin B.

Ellis openly and continuously asserted his ownership of the land covered by this certificate. When his widow, under whom appellants claim title, administered upon the community estate she included this land, and the Polk county 208 acres, in the inventory. In 1864 Benjamin B. Ellis sold and conveyed to Emeline Evans 110 acres of the 432-acre survey, of which the land sued for is a part. Mrs. Evans went into possession at once, and she and those holding under her have been in open and continuous possession of it since; it having been several times sold and conveyed by recorded deeds. In fact the undisputed evidence was that the title and ownership of this land had been openly and actively asserted by Benjamin B. Ellis and his heirs without question, although some of the heirs of Benjamin Ellis, Sr., lived in the immediate neighborhood and must have known of this claim, and they never at any time asserted or claimed title to it or any part of it. The issue was fairly submitted to the jury, and the evidence was amply sufficient to authorize the presumption of a transfer of the certificate to Benjamin B. Ellis in some such way as to afford lawful origin of the title claimed. Pratt v. Townsend, 125 S. W. 115; Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 737; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033. Another and sufficient answer to these assignments is that appellant itself in this suit is asserting title under Benjamin B. Ellis, and under this very presumption of title in him, which is here assailed. The assignments must be overruled.

The fourth assignment presents two contentions of appellant: First, that the undisputed evidence shows that after the death of Benjamin B. Ellis his widow, Arrita Ellis, qualified as survivor of the community; and, second, that there was a partition of the community estate between herself and their children, whereby she received the land in controversy as her share. As to the first contention, we agree with appellant. J. B. Anderson, who, by all of the testimony, attended to Mrs. Ellis' business affairs, testified with much particularity that Mrs. Ellis made application to the probate court to be so appointed, filed inventory, and gave bond. He testified as to what property appeared on the inventory, and as to the names of the appraisers and of the bondsmen. There was no contradiction of any part of his testimony on this point. The probate records had been, after this, destroyed by fire. As to the second proposition we cannot say that the undisputed evidence showed the partition. There was no documentary evidence of such partition, except that another tract of land, as shown by deeds among themselves, had been divided among the heirs, and Mrs. Ellis had herself conveyed 100 acres of this other tract out of the Ward survey to one of her children. It does not necessarily follow that there had been such partition as is here asserted by which Mrs. Ellis was to get the tract in controversy. These deeds were executed in 1876. Some other explanation of their execution might very readily be made than the one insisted on by appellant. It further appears, however, that this land in controversy was claimed by Mrs. Ellis, and that she asserted her right and her intention to sell it without objection from the heirs of Benjamin B. Ellis, and that she was understood to be the owner. This might have been under her power as survivor of the community. These facts and circumstances are very cogent, and suggest very strongly that there was such partition as is claimed by appellant to have been made. They are amply sufficient to afford a basis for such presumption on the part of the jury, but they do not exclude the contrary presumption, nor are they of such force as to authorize us to say that no other reasonable conclusion can be arrived at than that such partition was made. On the contrary the witness Brent testified that the partition made only included the land in the Ward league, and the witness Anderson, testifying as a witness for appellant, stated that he always considered that the land in controversy was part of the estate of Benjamin B. Ellis, but that nothing had ever been done with it. The issue was submitted to the jury, and we assume was found against the contention here made by appellant, and this finding must be sustained. It was an issue of fact.

As will be seen later, this finding was not vital to the case. If there was such partition, unless it was followed by a sale and conveyance by Mrs. Ellis to S. T. Robb, as claimed by appellant, it would not preclude recovery by appellee, and this brings us to the third proposition asserted under this assignment, that the undisputed evidence, or at least the great preponderance of the evidence, showed that Mrs. Ellis after the death of her husband sold and conveyed the property in question to S. T. Robb, either under her right as owner under the partition referred to, or as survivor of the community, by conveyance in writing which has been lost or destroyed. There was no direct evidence of the execution of this deed. No witness had ever seen it or heard of it. If it was ever executed, it was long after the destruction by fire of the courthouse and records. It is clear that it was never recorded. To establish its execution appellant relies upon the following facts and circumstances: S. T. Robb rendered and paid taxes on the entire survey of 432 acres for the years 1883–1886. In August, 1886, three months after the death of Mrs. Ellis, he conveyed by general warranty deed the land in controversy—322 acres—to Thompson & Tucker, and the deed was recorded September 16, 1886. Thompson & Tucker and their vendees, the Thompson & Tucker Lumber Company, appellant, rendered and paid taxes on this land every year,

beginning in 1887, to the date of the trial. None of the grantors of appellee, during this time, rendered or paid taxes on the land. It was not shown that Robb ever openly asserted his ownership, except by the rendition and payment of taxes and the sale and conveyance to Thompson & Tucker, nor that he ever claimed to have a deed from Mrs. Ellis. His rendition for taxes was the entire survey, only 322 acres of which were then owned by the Ellises; 110 acres having been sold by Benjamin B. Ellis to Evans in 1864. The witness Evans testified that about 1884 J. B. Anderson wanted to sell him a tract of the Ellis land, and that he afterwards told him that he had sold it to S. T. Robb. Mrs. Anderson, daughter of Mrs. Ellis, testified that her mother lived three or four hundred yards from her, up to her death, and that her mother came to her house nearly every day, and she frequently visited her mother, and that she never heard her mother say anything about having sold the land to Robb, or that she intended to sell. Her husband, J. B. Anderson, testified that it was his understanding that Mrs. Ellis had sold and conveyed this land to Robb, and that she said she was going to sell it to him. He further said that Robb told him that he had sold the land to Thompson & Tucker, and that on the $100 he paid for it he would make $1,000. He testified, also, that after the death of Benjamin B. Ellis (in 1867) this land was rendered in the name of Mrs. Arrita Ellis from the time he knew her up to her death. Another witness testified that Mrs. Ellis paid taxes on it up to her death, and claimed to own it. Mrs. Anderson also testified that her mother talked freely to her about her business affairs, and that she never heard her say anything about having sold this land, and never knew of her having received any money or other consideration for it. Mrs. Brent, another daughter, lived about four miles from her mother, and visited her frequently. She testified that about two or three months before her death (she died May 15, 1886) she said that she was on a trade with Col. Robb for this land. She never heard that she had sold it, and never heard of her having received any money or other consideration for it. Her mother said that she was going to sell this land and another 160-acre tract, called "the Sumpter lands," to Col. Robb for $1 per acre. This witness stated that she had always claimed an interest in these lands up to the sale to appellee. The husband of this witness also testified to having heard Mrs. Ellis say that she "was on a trade" with Col. Robb for this land. This was a few months before she died. He had never heard her say that she had sold it to Robb, but it was the general understanding with his family that she had sold to Robb. Witness was the husband of one of Mrs. Ellis' daughters, and with his wife made the power of attorney to McKinnon. S. A. V. Ellis, a son of Mrs. Ellis, with whom she lived, was not interrogated as to the execution of this deed to Robb. All of these witnesses testified substantially that they had never made any claim to this land until approached by McKinnon, who solicited them for the power of attorney, and it appears that they had rather to be persuaded by McKinnon to execute the power of attorney, and did so after he had told them that there was no deed on record for the land. A careful search had been made for the deed, and no trace of it was ever found, and there was no direct evidence that it had ever existed. The patent was delivered to Robb, who paid patent fees, as shown by our findings. There is this inconsistency as to this evidence relied upon by appellant: Col. Robb's claim began in 1883, and the claim that this deed from Mrs. Ellis was the foundation of the claim is inconsistent with the testimony of Mr. and Mrs. Brent that two or three months before her death—that is in the early part of 1886—Mrs. Ellis said she was on a trade with Col. Robb for the land. She said that Robb was to give her $1 per acre for it. This is consistent with the testimony of Anderson that Robb told him he had paid $100 for it. Evans' testimony, also, was that Anderson tried to sell him a tract of the Ellis land in 1884, and afterwards told him he had sold it to Robb. Robb was a lawyer, but it seems not a very careful or systematic man. There is the further fact that Thompson & Tucker, who were shown to have been careful business men, do not appear to have gained any information as to this deed, although they bought in 1886. The conclusion is not unreasonable that they accepted Robb's warranty deed without special inquiry about the title. At least they never had the deed, and it would seem strange that if Robb had it when he conveyed to them, he did not turn it over to them.

[3] It appears that a condition of unusual intimacy existed between Mrs. Brent and Mrs. Anderson and their mother. It is a circumstance to which some weight should be attached that, while their mother, as Mrs. Brent and her husband testified, talked freely to them of the proposed sale to Robb, none of them ever heard of such sale having been made, or of their mother having received any money for it. And while Anderson, who was Mrs. Ellis' man of business, testified that he understood Mrs. Ellis had sold to Col. Robb, he had no direct knowledge of this fact. We have endeavored to give a brief summary of the evidence on this point. The question presented is: Does the undisputed evidence establish so clearly and unmistakably the execution of this deed that reasonable minds could come to no other conclusion, or is the finding of the jury that it was not executed so against the great and overwhelming weight of the evidence as to appear clearly wrong? If neither of these conclusions is true, the

verdict must stand. The presumption or inference to be drawn from these facts and circumstances is one of fact (Baldwin v. Goldfrank, 88 Tex. 257, 31 S. W. 1064), and the decision of the jury in such cases must be treated as their decision upon any other fact issue submitted to them. This court particularly has made a very liberal application of this doctrine of presumption of the execution of deeds in upholding the verdicts of juries in support of such presumptions (Pratt v. Townsend; Brewer v. Cochran; Frugia v. Trueheart, supra); but when the jury refuses to find from the circumstances adduced that a deed has been executed, their verdict must be treated as in every other case of a contested issue of fact. The verdict in the present case comes to us with the additional weight to which the action of the trial court in refusing to disturb it is entitled. The assignment presenting this contention on the part of appellant must be overruled.

[4] The fifth and sixth assignments complain of the admission in evidence, over the objection of defendant, of the powers of attorney executed to C. M. McKinnon. The objection was that they were void under the provisions of the barratry law. Acts 1901, p. 125. We have stated the material parts of these powers of attorney. The objection was properly overruled. There is no merit in the assignments.

[5] The deeds referred to in the seventh assignment were admissible for the purpose of showing claim of title in Benjamin B. Ellis to the 432-acre survey as a circumstance to support appellee's contention that the certificate had been transferred to him. These deeds were not in appellee's chain of title. The land conveyed was not, in fact, a part of that sued for, but was part of the 432-acre survey. So that it was no objection that the deeds were not embraced in the abstract of title.

There is no merit in the eighth assignment. It was appellee's contention that Benjamin B. Ellis, the father of his vendors, was the Benjamin Ellis, Sr., named in the certificate. The allegation in the petition with reference to the claim of damages that these parties "were the heirs of Benjamin Ellis, Sr.," must be understood to mean that they were the heirs of the person who was claimed by them to be Benjamin Ellis, Sr.

The ninth assignment of error proceeds upon the assumption that the land had been allotted to Mrs. Arrita Ellis in the partition referred to, and was her separate property. This assumption is not authorized, as we have shown in passing upon that question.

[6] There was no material error in overruling the motion for a new trial on the ground of the newly discovered evidence of Mrs. W. E. Mayes. This evidence is set out in full, from which it appears that it refers

only to the fact that Benjamin B. Ellis was not the Benjamin Ellis, Sr., to whom the certificates were granted. We have found that the practically undisputed evidence established this. The statement in the affidavit that she had never heard that her grandfather's land had been sold or transferred to Benjamin B. Ellis was immaterial. It does not appear that her want of knowledge or information of this fact would, to any extent, serve to weaken the force of the evidence introduced by appellee to show such transfer.

We have examined all of the assignments of error and the several propositions thereunder. None of them presents any ground for reversal of the judgment, which is therefore affirmed.

Affirmed.