MRS. BETTIE SCHULTZ ET AL V. PRESTON K. SHATTO.

No. A-2885. Decided March 7, 1951.
Rehearing overruled April 11, 1951.
(237 S. W., 2d Series, 609.)

*Miller & Rutta, Massey, Hodges & Moore,* and *Hollis Massey,* all of Columbus, for petitioners.

The Court of Civil Appeals erred in holding that it was necessary to show title in Robson at the time of the dedication; that the burden was not on respondent to show the use was permissive and that there was no presumption of a dedication by Robson as owner, although he stood by for almost 80 years while lots were being bought and sold with reference to the street in dispute and during which time no taxes were assessed against said strip of property. McQuade v. Wilcox, 215 Mich. 302, 183 N.W. 771; 43 Texas Jur., 660; Foster v. Patton, 104 S.W. 2d 944; 14 Texas Jur. 703.

*G. F. Steger,* of Columbus, *Powell, Wirtz & Rauhut, John B. Connally, A. J. Wirtz,* of Austin, for respondent.

In reply to the contentions set forth by petitioners, respondent cites the following authorities. Adams v. Rowles, 149

Texas 52, 228 S.W. 2d 849; Howard v. Masterson, 77 Texas 41, 13 S.W. 635; Nave v. City of Clarendon, 216 S.W. 1110.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

Petitioners were plaintiffs and interveners in the trial court, who sought an injunction against the respondent, Preston K. Shatto, preventing him from erecting obstructions across a tract of land, described by metes and bounds and also designated as "New Street." Petitioners further sought a judgment enjoining respondent from interfering with their use of said disputed tract of land as a street; and sought a judgment of the court establishing and designating the land as a public street in the town of Columbus, Texas. They alleged facts in their pleadings seeking relief upon three grounds as follows: (1) that Robert Robson, in 1869, was the owner of this land and dedicated same as a public street; (2) that Robert Robson had dedicated a private easement in favor of petitioners to use the land as a public street, either impliedly or directly, by virtue of the making of a map or plat by Robson and a sale of the lots shown on the map by reference to the map or plat, and also by reference to the land in controversy as "New Street", and (3) that by use and enjoyment of said land as a street for more than 65 years the land had become a street by prescription and both petitioners and the public generally had a right to use the same as a street.

Trial was to the court without a jury, and at the conclusion of the testimony, judgment was rendered for petitioners as prayed for, declaring the land to be a public street, establishing said "New Street" as a public street, and enjoining respondent from interfering with the use of such property as a public street, and ordering him to remove the obstructions which he had erected thereon. No findings of fact or conclusions of law were filed nor requested. On appeal, the Court of Civil Appeals sustained Shatto's assignments that the evidence was insufficient to sustain the judgment and held "that the evidence so adduced by appellees (petitioners here) failed to establish any such easement, either by dedication or prescription." Also, "upon the contrary, the body of the evidence, as a whole, not only sustains the other points-of-error so presented here by the appellant, (respondent here) but especially his quoted seventh one, that the use of this property, either by the individual appellees, the Town of Columbus, or the public generally, had ever been more than such casual and promiscuous use thereof as had been made of adjacent vacant lots elsewhere in the town generally."

The Court of Appeals further held "our authorities have long held that, to constitute a dedication of a street, or of a private way, it must be shown that the owner made and exhibited a map or plat of the ground designated as a street, or alley, and that lots were sold with clear reference to it." 232 S.W. 2d 266. The Court of Civil Appeals reversed and remanded the cause.

Petitioners sought to show a dedication by introducing an execution, dated May 16, 1868, showing that on March 6, 1868, one William Harberts, Administrator, recovered a judgment for $3,369.20 against Robert Robson. Also introduced was an agreement signed by Robert Robson whereby the execution issued was stayed to June 1, 1869, upon promise of Robson not to appeal or contest the justness of the claim and to pay the judgment within such time. Next introduced was another execution, dated June 2, 1869, and the levy and return of the sheriff of Colorado County thereon. In his return the sheriff recites the receipt of the execution and the levy upon other property belonging to defendant Robson; then he says "also (levied upon) twenty-nine lots (29) in the town of Columbus, Colorado County, Texas, said lots being portions of (certain part of West 1/2 of Blk. 8 of said town) and said lots particularly marked out on a certain map or plan, furnished me by said Robson subdividing said half block and said original lots and numbered upon said map, as follows: (here he sets out Numbers 1 through 32, each in parentheses, omitting 3, 4 and 10)." Then he recites a levy on other property, and that in July, 1869, the parties agreed to postpone the sale under the execution until the first Tuesday in August, 1869. Next he makes the necessary recitations as to the advertisement and lists the sale of each of the 29 lots, together with the amount brought by each, and the names of the purchasers. Included is a report of a sale of a certain vacancy, which does not affect the land included within the alleged street. The return is duly signed, returned and filed. Pursuant to said sale the sheriff makes deeds to the lots to the various purchasers of same. The three deeds set out in the testimony each contain, among other things, a recitation to the effect that the lots sold under the execution and so deeded were "numbered as follows on the map or plan made by Robert Robson subdividing said half block and said original lots in said half block." The deed to Robert L. Foard and E. M. Glenn, dated August 9, 1869, in describing Lot No. 11 says: "Lot Number Eleven beginning at the SW corner of the New Street as laid out on Robson subdivisional map or plan; thence South, etc., thence East, etc., thence North 24 ft. to a point in said New Street, thence West

sixty-six feet along said New Street to the place of beginning. Lot Number Seventy-eight (but later described as "28", showing "78" was a clerical error) fronting on said New Street as laid down on Robson's subdivisional map, etc." The description of Lot No. 15, also calls for a "point on Milam Street 74 ft. from the NW corner of the New Street as laid on Robson's subdivisional map." Lot No. 25 is described as fronting twenty-two feet on the north side of "the New Street as laid down on Robson's subdivisional map." In the sheriff's deed of same date, conveying certain other lots to the purchaser at the execution sale, reference is made to "the New Street laid off by said Robson on his map" in two or more instances. In describing the lots sold and conveyed to the purchaser and grantee in the deed, John T. Harcourt, it is recited more than once that Robson had a map or plan subdividing the original lots in the west half of Block 8. Similar language is used in the sheriff's deed to Mrs. S. M. Claiborne in describing the lots which she bought at the execution sale, and which reads as follows: "* * * the same (W 1/2 Blk. 8) having been subdivided by the said Robson into small building lots and sold accordingly as his request and numbered on a subdivided plan or map presented by him to said Robson on the day of sale * * *." This deed calls for "New Street", as shown on the new plan, "* * * and conveys to Mrs. S. M. Claiborne the property purchased by her together with the privilege of said New Street laid out as aforesaid which the said Robson had, etc. * * *".

All of the above deeds were recorded in Deed Records of Colorado County, Texas, on August 16 and 17, 1869. On December 10, 1869, the sheriff conveyed certain lots to one Phila W. Johnson, reciting they were sold on the first Tuesday in December, 1869, under an execution on a judgment rendered against Robert Robson in favor of Simon Thulemeyer. This deed states "* * * the same (property) having been subdivided by said Robson into small fractional lots as shown on a plan or map which was exhibited by said Robson on the day of sale, etc. * * *." No map or plat prepared by Robson was ever placed of record, and no one, who testified, ever saw such map or plat. The petitioners held titles to their respective properties under these sheriff's deeds and it is stated that each and every deed in their title referred to Robson's subdivisional map or plan subdividing the west one-half of Block 8, and many referred to "New Street" or "Little Street."

This alleged street was approximately in the middle of the west one-half of Block 8 in the town of Columbus and was about

50 feet north and south by 166 2/3 feet east and west, and fronted on Milam Street which ran north and south along the west side of Block 8. Intervenor, Laas, bought his property in 1906 and it lay immediately north of the property in controversy. Plaintiffs, Mrs. Jennie Burger and Robert Burger, own the property adjoining, and on the south of the alleged "New Street" and have had their titles since 1905 through their immediate grantor, Emil Burger, and 1924 as to E. J. Burger. Mrs. Bettie J. Schultz, a plaintiff, owns a tract of land on the south side of the alleged street, which has been in the family since 1906. Plaintiff, First State Bank of Columbus, owns a tract of land on the south side of the alleged street, between the Burger tract and the Schultz tract and the Bank owned this tract since in the 1920's. The Schultz tract and the Bank tract are not on any street and their only frontage is, and has been, into the alleged street and along it to the main streets of Columbus. There is a warehouse on the east end of the Laas property which fronts on this alleged street, and access can be had only along this alleged street. These conditions have existed for many years in excess of the 10 years necessary to secure a prescriptive right to use the property in controversy as a street.

The testimony is uncontradicted, and the only argument is to the effect to be given the testimony. It is shown that from 1869 down to the time the respondent secured a deed to the land in controversy—August 26, 1948—no claim was ever made to this land by anyone, nor was there any interference with the public's use of the land as a street. Since 1927, (when the city was incorporated) it was testified by the city manager and by a member of the City Council that the city had worked this as a street, putting gravel on it, dragging it, and keeping down the weeds on it. The city built and paid for a sidewalk in front of this land along Milam Street, and inclined the walk so traffic could easily pass over and onto the tract of land. This is the only sidewalk in that block paid for by the city. The evidence shows that a delivery man, in servicing the places of business fronting on this passageway as well as other buildings, and the rears of which were reached by using this passageway, has driven over this passageway daily for 20 years prior to the trial. This particular property was not rendered for taxes by anyone until respondent secured his deed in 1948, and he then paid taxes on it. Evidence was introduced showing this property was used as a passageway by the public as far back as 1894 and continually since that time, and without any adverse claim or obstructions until 1948 after respondent secured his deed.

■ It is claimed by respondent that there was no evidence to show the use was not permissive. Because the evidence showed there were other vacant lots in this block across which the public passed and with permission of the owners, it is claimed that it must follow that the use of the lot in question was by permission of the owner. Such is not the case, as the other properties were rendered for taxes and taxes paid by the owners. The city never made any claim to use same as a street. The city did put some gravel on the Laas property in order to fill in a mud hole and make it passable, but this was done by the express permission of Laas. The use of all other lots was shown to be by permission of the owners. Of course, such use can never ripen into a prescriptive title.

See Foster v. Patton (Tex Civ. App.) 104 S.W. 2d 944, writ dismissed, want of jurisdiction, which was a case wherein a roadway was claimed by prescription, and also Dortsch v. Sherman County (Tex. Civ. App) 212 S.W. 2d 1018, no writ of error history, which also involves a right to a roadway by prescription. Both cases also declare the rule as to which party has the burden of proof upon the issue as to whether or not the use of the land was by permission of the owner to be that "where the claimant has shown an open, visible, continuous, and unmolested use of the land for the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right, so as to place upon the owner of the servient estate, in order to avoid the acquisition of an easement by prescription, the burden of rebutting this presumption by showing that the use was permissive."

■ The existence of a lost map or plan may be proven by secondary evidence, the same as any other lost instrument. It was a fact question to be determined by the trier of the facts—in this case the trial judge. He found in favor of plaintiffs and he could consider all the facts and circumstances admitted in evidence in determining his judgment. It is contended that the recitals in the sheriff's return on the execution, and in the sheriff's deeds were not admissible in evidence, and therefore constituted no evidence of the existence of a map or plat .We think this contention is in error. At the time of trial these instruments were more than 79 years old and had been of record for all that time. The evidence shows that no claim adverse to the facts stated in these instruments had ever been urged until 1948 when respondent secured his deed. The public generally and the owners of lots and buildings in the west half of Block 8, had used the "New Street" as a public street during all this

time. The west half of Block 8 had been transferred and held in accordance with "Robson's subdivisional map or plan." All those who were living in 1869 at the time of sale were dead and no witnesses were available as to such happenings. We think these documents were admissible as ancient instruments and their recitals were admissible as circumstances showing the dedication of "New Street" by Robson, and to be considered by the court along with the other circumstances in determining the judgment to be rendered.

■ From the case of Magee v. Paul, 110 Texas 470, 221 S.W. 254, 256, 257, we quote:

"Since it is not consistent with human experience for one really owning property of value to assert no claim thereto, but to acquiesce for a long period of time in an unfounded, hostile claim, the rule is sound which permits the inference that an apparent owner has parted with his title from evidence; first, of a long-asserted and open claim, adverse to that of the apparent owner; second, of nonclaim by the apparent owner; and third, of acquiescence by the apparent owner in the adverse claim.

"The rule is essential to the ascertainment of the very truth of ancient transactions. Without it, numberless valid land titles could not be upheld. Its application becomes more and more important with the passing years, as it becomes more and more difficult to get living witnesses to that which long ago transpired.

"As evidence of a claim of ownership, recitals in ancient instruments are admissible over the objection that they are hearsay or self-serving. Dunn v. Epperson (Civ. App.) 175 S. W. 841; Sandmeyer v. Dolijsi (Civ. App.) 203 S. W. 118. The principal reasons which forbid the exclusion of such recitals have been stated with such clearness and force in a series of opinions by the lamented Judge Reese, as to obviate the necessity for further discussion. Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033; Frugia v. Truehart, 48 Tex. Civ. App. 514, 106 S. W. 739; Hirsch v. Patton, 49 Tex. Civ. App. 499, 108 S. W. 1017; Thompson & Tucker Lumber Co. v. Platt (Civ. App.) 154 S. W. 270."

Judge Alexander, while a member of the Waco Court of Civil Appeals, in the case of Boulware v. Kempner, 36 S.W. 2d 527, no writ of error history, made a very clear statement of the law when he said:

"The existence of the deed from the attorney in fact to A. H. Wier was necessary to establish appellee's claim of title to the land in question. The recitations in the above deed were hearsay and self-serving and ordinarily would not be admissible, and if standing alone, would not be sufficient to establish the existence of the missing conveyance. But where it is sought to establish the execution of deeds to land, the originals of which have been lost or destroyed without being recorded, the courts are very liberal in the admission of all the surrounding circumstances that would tend to establish the existence of such deeds. This is especially true where it is an ancient title paper, the existence of which is sought to be established. If this were not true, many honest titles would be defeated. Ordinarily the courts will admit evidence of all the surrounding circumstances, both before and after the date on which such lost instrument is supposed to have been executed for the purpose of determining the existence or nonexistence of such an instrument. In such a case, by reason of the law of necessity, the rule against self-serving declarations is relaxed, and such declarations, when they are themselves found in ancient documents, will be admitted as a circumstance to establish the existence of the lost instrument. Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 736 (writ refused); Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033 (writ refused); Magee v. Paul, 110 Tex. 478, 221 SW 254; Hirsch v. Patton, 49 Tex. Civ. App. 499, 108 S. W. 1015; Sandmeyer v. Dolijsi (Tex. Civ. App.) 202 S. W. 113."

See also Hirsch v. Patton, 49 Tex. Civ. App. 499, 108 S.W. 1015, no writ of error history; Brewer v. Cochran, 45 Texas Civ. App. 179, 99 S.W. 1033, 1. c. 1035, writ of error denied; Note to 6 A. L. R., p. 1437; Bendy v. W. T. Carter & Bros. (Comm. App.), 269 S.W. 1037, 1. c. 1038-9; Bruni v. Vidaurri, 140 Texas 138, 166 S.W. 2d 81, 1. c. 90 (14), (15, 16), 17 Tex. Jur., p. 719, "Evidence-Civil Cases", Sec. 308; *Idem,* Sec. 287, p. 675, et seq.

■ We think under all the facts and circumstances of this cause that the trial court was justified in concluding that there had been a dedication of this property as a public street.

Also we think the trial court was justified in rendering judgment for the petitioners upon a prescriptive right to use the land in question as a public street or roadway.

■ The case of Ladies' Benev. Soc. v. Magnolia Cemetery Company (Comm. App.), 288 S.W. 812, states the law as to prescriptive rights to be:

"We come now to notice the contention of the plaintiff to the effect that the roadway in question is shown to be a public way by prescription. In order to establish a right of way by prescription, it is necessary to show that an uninterrupted user of the way has been made by the public, under an adverse claim of right, for the statutory period of limitation. This adverse claim of right may be proved by circumstantial evidence, sufficient to sustain the conclusion, but it must, nevertheless, be proved in some way by legal evidence, else the alleged prescriptive right fails. The use of lands of another by the public as a roadway, with the acquiescence of the landowner, will not ripen into a prescriptive right, no matter what period of time such use may continue, unless the evidence shows, circumstantially or otherwise, that the use was by claim of right adverse to the landowner, of which adverse claim the latter has notice. Cockrell v. City of Dallas (Tex. Civ. App.) 111 S. W. 978; West v. City of Houston (Tex. Civ. App.) 163 S. W. 680; Cunningham v. San Saba County, 20 S. W. 941; 1 Tex. Civ. App. 480; De George v. Goosby, 76 S. W. 66, 33 Tex. Civ. App. 187; Railway v. Montgomery, 85 Tex. 67, 19 S. W. 1015; Gilder v. City of Brenham, 67 Tex. 345, 3 S. W. 309; 14 Cyc. pp. 1148, 1151. We think that the evidence here fails to raise an issue of fact as to the existence of a public right of way over the land in dispute by prescription."

See also Evans v. Scott, 37 Tex. Civ. App. 373, 83 S.W. 874, 1. c. 877, no writ of error history; Phillips v. Tex. & Pac. Ry. Co. (Comm. App., opinion approved by Sup. Ct.), 296 S.W. 877, 1. c. (8), (9-11), p. 880; Porter v. Johnson Tex. Civ. App., 151 S.W. 599; 1. c. 601, no writ of error history; Hall v. City of Austin, 20 Tex. Civ. App. 59, 48 S.W. 53, no writ of error history; Nave v. City of Clarendon (Tex. Civ. App.) 216 S.W. 1110, 1. c. 2nd col., p. 112, no writ of error history; 39 Tex. Jur., p. 521, et seq., "Streets", Secs. 10 and 11; Weldon v. Quaite (Tex. Civ. App.) 175 S.W. 2d 969, 1. c. (5-6), (7), and (8, 9), where it is said:

"While there was no evidence that plaintiffs, or any member of the public, had, by word of mouth, claimed the right to use the strip of land in question adversely to defendants and the predecessors in title, the jury had the right to infer that such use was adverse and under claim of right from the character of the use of the property and the circumstances connected with its possession. Boone v. City of Stephenville, supra; Hall v. Austin, supra." No writ of error history.

■ This case was fully developed upon the trial in the District Court, and there is no evidence in the record to contradict the use of the land by the public as a street and passageway for more than 75 years. The evidence being uncontradicted its effect becomes a matter of law. Davis v. Davis, 141 Texas 613, 175 S.W. 2d 226. We hold that by prescription the land in controversy was a public street. Therefore, the judgment of the Court of Civil Appeals reversing and remanding the cause to the District Court of Colorado County, Texas, for a retrial is reversed, and the judgment of the District Court of Colorado County, Texas, is in all things affirmed.

Opinion delivered March 7, 1951.

Rehearing overruled April 11, 1951.