**TEXLAN, INCORPORATED, et al.,**
Appellants,

v.

**FREESTONE COUNTY, Appellee.**

No. 3279.

Court of Civil Appeals of Texas.

Waco.

Sept. 15, 1955.

Bowlen Bond, Teague, for appellants.

Elmer McVey, H. L. Williford, Fairfield, for appellee.

TIREY, Justice.

Freestone County brought this suit against the appellants to establish a certain public road in the eastern part of the County and described it by metes and bounds. It alleged that appellants had placed a gate across the public road at a point where the road intersected the Rock Springs and Butler Public Road and that they locked the gate; that the placing and locking of the gate across the public road at a point which was .8 of a mile from the intersection of the Rock Springs and Butler Public Roads completely obstructed such road and that such obstruction prevented the public from going to and returning from Tyus Bluff or the Board Pile on the Trinity River. Appellee further alleged that appellants have caused such obstruction to be erected and maintained across the public road and prevented the general public from using same and have threatened to continue such obstruction and will do so unless the court issues a mandatory injunction commanding them to remove the obstruction from the road. Appellee further alleged that such obstruction constitutes a public nuisance and asks for the abatement of same and for a mandatory injunction requiring appellant to remove such gate and remove the lock from the gate and to refrain from again erecting and locking such gate, and they asked for general relief.

At the close of plaintiff's case the appellants filed motion to withdraw the cause from further consideration by the jury and render judgment for appellants, which motion was overruled. We sustain the court's action in this behalf. See Weldon v. Quaite, Tex.Civ.App., 175 S.W.2d 969 (no writ history) and authorities there cited. Our Supreme Court in Schultz v. Shatto, 150 Tex. 130, 237 S.W.2d 609, points 10 and 12, at page 615, approved and followed the pronouncements made in Weldon v. Quaite, supra. See also Maricle v. Hines, Tex.Civ. App., 247 S.W.2d 611, point at page 613 (no writ history).

The jury in its verdict found substantially (1 and 2) that the roadway described in plaintiff's petition was continually used and traveled by the public generally whenever it saw fit to do so for a period of ten years or more next preceding the 26th of March 1954, and that such travel was substantially along and upon the same route from a point on the Rock Springs or Butler Road to Tyus Bluff, and that such use aforesaid was open and notorious and adverse; (3 and 4) that the roadway described in plaintiff's petition was continually used and traveled by the public generally whenever it saw fit to do so for a period of ten years or more next preceding the 26th of March 1954, substantially along and upon the same route from Tyus Bluff to Board Pile, and that such use on the part of the public was open and notorious and adverse to appellants.

In the judgment we find substantially this recital: It is decreed by the court this 12th day of November 1954 that the right of way and road extending eastward from a point one-half mile south of the old William Tyus homestead on the Rock Springs and Butler Public Roads and the Board Pile on the Trinity River be and the same is hereby adjudged to be a public road by prescriptive

rights, and described the road by metes and bounds. We also find substantially the following recital: It is ordered by the court that the defendants, Texlan, Inc., Obie P. Leonard, Thad Kirby, their agents, servants and employees, have created a public nuisance by placing gates across said roads and by placing locks on such gates and thereby prevented the public from free and uninterrupted use of such road. It is ordered that such obstruction and nuisance be abated and that a mandatory injunction issue from this court commanding the defendants and their agents to remove the locks from such gates and to refrain from again locking such gates and from anywise obstructing the free and uninterrupted use by the public generally. The defendants seasonably perfected their appeal to this court.

The judgment is assailed substantially as follows: (1) the court erred in overruling defendants' motion to withdraw the case from the jury and render judgment in favor of defendants; (2) that since the undisputed evidence showed that the use of the roadway was by license and permission of the owner and no proof was tendered that the use of the land by the public was with the consent of the owner, Freestone County could not recover as a matter of right; (3) that the undisputed evidence showed that the public did not use the defined way for a period of ten successive years for any period just prior to March 26, 1954, and therefore Freestone County could not recover; (4 and 5) evidence being undisputed that any use of the roadway by the public was in common with the use of the land made by the owner, such use was not inconsistent with the use and license and permission of the owner, and such use was not such adverse possession as would ripen into a prescriptive right, and therefore Freestone County had no cause of action.

Appellee's counter points are to the effect: (1) that the court did not err in overruling defendants' motion to withdraw the case from the jury because the issues submitted by the court were made by the pleadings and tendered by the evidence; (2) "appellee denies that the undisputed evidence showed that the use of the way was

by license and permission of the owner, and appellee denies that no proof was made that the consent by the owner to the use of the land by the public was as a matter of right, but on the contrary appellee says that the public traveled such road as a matter of right and that long and continued adverse use and enjoyment by the public was amply shown by the evidence; (3) appellee denies that the undisputed evidence shows that the public did not use a defined way for a term of ten successive years for any period prior to March 26, 1954, and appellee states to the court that the evidence shows the use by the public, of this road, adversely to everyone for a period of more than fifty years continuously, prior to March 26, 1954, with the exception of about two or three months in 1941 or 1942; (4) appellee denies that the undisputed evidence shows that the use of the way made by the public was in common with the owner of the land. Appellee says that the use of the way by the public was adverse under a claim of right and was notorious and was not in common with the owner of the land."

Appellants in their brief say substantially that the pleadings were insufficient to describe a definite way to enable the roadway to be accurately located on the ground, and that there was no evidence to support a judgment condemning private property for public use and if the judgment is sustained and the owner of the land constructed a fence bounding the roadway, then the use of the road without the attending camping, fishing and hunting rights to the public generally would be wholly defeated, because the uncontradicted evidence showed the only purpose of such use was for hunting, fishing and camping on the private lands of the appellants; that no condemnation of the land, or any part thereof, has been undertaken by the State, or any other political subdivision authorized to do so, and to do so without adequate compensation therefor is a violation of Section 17, Art. 1 of the Vernon's Ann.St.Constitution of Texas.

Appellants contend specifically that their motion for judgment should have been

granted on the following grounds: (1) the description of the roadway was insufficient to support a judgment; (2) testimony as to the use of the road by people generally was not such a use as to constitute a public use; (3) that the travel over the land of another by a mere user, by license or permission of the owner, affords no basis for prescription, in the absence of consent by the owner to the use of his land by the public as a matter of right; (4) where the traveler is confined neither by fences nor by natural configuration of the country to a definite road line, the discursive travel that ensues, no matter how long continued, does not establish a prescriptive right; and (5) the use of a way over the land of another when the owner is also using the same is not such adverse possession as will serve as notice of a claim of right, the same not being inconsistent with a license from the owner.

It is our view that the foregoing contentions of the appellants are not applicable to the issues made by the pleadings and the testimony tendered for reasons which we will hereinafter briefly state.

■ First of all, appellee went to trial on its first amended original petition. We find no exceptions to this pleading. In the absence of such special exceptions, the petition will be liberally construed in the pleadder's favor. See Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, points 1 and 2, 141 A.L.R. 50.

■ Going back to the pleading, we find the following allegation:

" * * * there exists in Freestone County, Texas, a certain public road, situate in the Eastern part of the said county, which is described as follows:

"On M. Riondo Grant in Freestone County, Texas,

"Beginning at a point on the Rock Springs and Butler Public Road, ½ mile South of the old Tyus home place in the East line of said road;

"Thence in an Easterly direction 20 feet North of the center line of a well

worn and traveled road 1.2 miles to Tyus Bluff on the banks of Trinity River;

"Thence in a southerly direction 20 feet East of a center line of a well traveled and worn public road .9 of a mile to the Board Pile Site on the banks of the Trinity River;

"Thence West 40 feet;

"Thence in a northerly direction 20 feet West from the center line of said highway .9 of a mile to Tyus Bluff on Trinity River;

"Thence in a westerly direction 20 feet south of the Center line of the Tyus Bluff and Board Pile Public Road 1.2 miles to the east line of the Rock Springs and Butler Public Road;

"Thence North with the East line of the Rock Springs and Butler Public Road, 40 feet to the place of beginning.

"That such Public Road has been used by the traveling public, for such a period of time that the memory of man runneth not to the contrary, under a claim of right, uninterrupted, continued for a period of time of more than 10 years, and for more than 25 years, and for more than 50 years, and for more than 100 years immediately preceding March 26, 1954."

We think that the above description within itself and by references there made can be identified with reasonable certainty, and we think the testimony tendered does identify the roadway under the description set out in the plaintiffs' amended pleading on which it went to trial. See Hoover v. Wukasch, 152 Tex. 111, 254 S.W.2d 507; Maupin v. Chaney, 139 Tex. 426, 163 S.W. 2d 380. See also Leone Plantation, Inc., v. Roach, Tex.Civ.App., 187 S.W.2d 674, 681 (writ ref.); Kuklies v. Reinert, Tex. Civ.App., 256 S.W.2d 435, points 5 and 6, writ ref. n.r.e.

■ But appellants contend that the use of the road was not such as to constitute a public use. We are not in accord with

this view. The Statement of Facts contains some 435 pages, including exhibits. Necessarily we cannot state the testimony tendered as to the use made of this road in any detail. One of the witnesses tendered, J. S. Anderson, said he had attained the age of 91 years and was familiar with the area in Freestone County known as Tyus Bluff and Board Pile on the banks of the Trinity River and the Rock Springs and Butler Public Road and the Rock Springs and Tyus Bluff Public Road up until about 35 years ago.

"Q. About how many years, Mr. Anderson, were you fairly familiar with the area around Tyus Bluff and Board Pile prior to 35 years ago, what period of time did you have opportunity to observe it frequently? About what period of time? A. Well, I have been, to the best of my knowledge, I think I would be safe in saying that as far back as 70 years or more. I have been going, as I said, up until 35 years ago, before I quit. Up until that time I was fairly familiar with that section of the country, hunting and fished in there quite a bit.

"Q. Do you know where the home of Mr. Billy Tyus is situated on the Rock Springs and Butler Public Road? A. Yes, he lived this side.

"Q. Do you know where the Rock Springs Baptist Church is situated, Jess? A. Yes, I know where Rock Springs are and I think there was a church there the best I remember.

"Q. During the time that you were familiar with that area, Mr. Anderson, were there any fences or gates or any obstruction calculated to turn cattle and people in that territory? A. No, up until the time I don't think there was any fencing at all, I don't remember ever seeing any of that fenced up except, of course, around Tyus's place there, home there, he had his fenced, of course, but the outside was open.

"Q. Do you not recall, Mr. Anderson, a road extending from Rock Springs and Butler Public Road easterly where, from where it intersected this road to Tyus Bluff and Board Pile? Do you recall a road existing there during that time? A. Oh, yes.

"Q. Did you travel that road? A. Sure, yes, sir.

"Q. Did you observe other people, the public generally traveling that road? A. Well, there was an easement there, a public road we called it.

"Q. Did you ever know of anybody getting permission to travel that road? A. No, not that I know of.

"Q. Do you know, Mr. Anderson, when the road was first put there, first a road there, do you know when the beginning of it was? A. Well, I couldn't say. I will tell you this instance that I remember and that would give you an idea. I was about 18 years old, I guess, and a cousin of mine bought a livery stable here in town and Mrs. Tyus, Grandma Tyus, the old lady, we called her that, came by the livery stable and hired a horse and she was going to her home down yonder on Tyus Bluff there, this side and she got out across some little stream and for some reason the horse shied and the saddle turned and threw her off in the creek and she turned around and came back and I remember I was down there when she got back and she was so mad, you know, about that and actually got wet, you see, and mad too. I never would forget that. And counting back that's been over 70 years ago, 71 or 2 possible. That's how come me to remember that instance, I will never forget it.

"Q. Do you remember, Mr. Anderson, can you remember whether or not the steam boat took on wood at the Board Pile back in the early days? A. Well, I do know that an uncle of mine, William Cotten, lived, that is had a business, had a store down there, just exactly where it was, right there in the neighborhood of Tyus Bluff. He

run a store there and I have heard him speak of it and people at that time would take their cotton down there and ship it. These boats would come up to where he was located and with merchandise to be distributed to the people in the surrounding country. Now, that is the reason, he was kin to us and I heard him talk about it, that is the only way I would know anything about that."

L. S. Tyus, who was born in that area, testified to the effect that he had knowledge of this road in that particular area for some 50 or 60 years and that he was 67 years old and that he had been traveling the road by wagon, buggy and every other way. He testified in part:

"Q. For what period of time, Lewis, when you lived at home did you have occasion to travel that road that extended from Rock Springs and Butler Public Road to Tyus Bluff? * * * A. Oh, yes. I traveled it off and on all the time, my boy days and after I was grown too.

"Q. Was it used by the public generally? A. Yes, sir, it was.

"Q. Is the road fairly straight from where it intersects the Butler and Rock Springs Road to Pine Bluff, Tyus Bluff? A. Tyus Bluff, yes, sir, that is practically a straight road through there to Tyus Bluff.

"Q. Is the course of that road or location of it the same now as it was when you first knew it? A. Yes, sir.

"Q. Has there been a few little bad places in the road where brush had been hacked out and where— A. That's right.

"Q. You circled around and came back into the road? A. That's right.

"Q. Have you had occasion to go over that road recently, Lewis? A. I was over that road last July up to the Cemetery.

"Q. Do you know if there has now been placed some gates across the road?

A. Well, there was gates at that time but it was locked, that is the first gate, the first gate after you left the Rock Springs Road up to the cemetery, it wasn't locked at that time.

"Q. During the period of time when you first knew the road up until this fence was placed between the Tyus Cemetery and the river, did the public travel that road generally so far as you know? A. As far as I know they never have ceased traveling it.

"Q. Did you ever ask permission of anybody to travel that road? A. No sir.

"Q. Does that road from its appearance indicate that it has been a well traveled road for many years? A. Oh, yes, for hundreds of years.

"Q. Do you know, Lewis, how did the Board Pile site, how did it get its name originally? A. Well, sir, around—after Grandpa settled there, so I have been told by my father, that it was originally known as the Wood Yard, that is where the boats stopped and taken on wood. Then after the steam boats quit running along in '75, along about that time, why, the neighbors round and about the country, would go across the river and get out boards and they would board them across and pile them and originally there is where it got its name, Board Pile."

Moreover, evidence was also tendered to the effect that at various times some three or four different persons were engaged in commercial fishing in the immediate area of Tyus Bluff on the Trinity River and the public generally went there to buy fresh fish. One of the commercial fishermen was "Snapper" Hughes.

We think the evidence tendered as to the issues pleaded by the appellee is sufficient to sustain each of them, and the jury, being the trier of the facts, had the duty and responsibility of passing upon the credibility of the witnesses and determining the

ultimate issues before them and, in so doing, they could reject or accept the testimony of each witness in whole or in part as they found the facts to be. The foregoing principle is so embedded in our jurisprudence that citation of authorities is not necessary to this point. However, see Oil City Iron Works v. Stephens, Tex.Civ.App., 182 S.W.2d 370, points 1 and 2 (no writ history) and authorities there cited for statement of the rule. See also opinion of our Supreme Court in Texas Employers Ins. Ass'n v. Knipe, 150 Tex. 313, 239 S.W. 2d 1006; also cases cited in 36 Tex.Dig., Trial, ⚖139(1), 140(1), and 143; also Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345, points 1–3.

In appellants' brief we find this statement: "We now come to the fifth proposition of law that the use of a way over the land of another when the owner is also using the same is not such adverse possession as will serve as notice of a claim of right, such use not being inconsistent with a license from the owner. Most all of the appellee's witnesses testified to the use made by the owner's tenants and lessees of the way to take in and out the harvested crops, to reach the tenant house and to transport out lumber milled on the land, and certainly no witnesses contradicted such a fact. The question of use by the owner through his tenants and lessees was conclusively established for the entire period of prescription claimed by appellee." We are not in accord with this view. On the contrary, we think this case is controlled by the pronouncements in Weldon v. Quaite, supra, and Schultz v. Shatto, supra.

The court in its charge instructed the jury that the word "adverse" as used in this charge "means the use of the road in question by the public under such circumstances as were reasonably calculated to put the owner upon notice that the public was using the land under claim of right inconsistent with the use made and enjoyed by the owner of said land for the period

of time in question and that such use was not by license or permission." By the term "claim of right" as used in the charge "is meant a use of the land in question by the public under circumstances reasonably manifesting that the public is using this road of its own initiative as if it owned said road and without seeking permission or consent from anyone including the defendants or their predecessors in title."

No point is here raised that the foregoing charge is incorrect and it is our view that under all of the testimony tendered the issue of adverse use was tendered and the jury has found in favor of appellee on such issue.

Being of this view we do not think that appellants brought themselves within the rule of Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622, nor the opinion of this court in Gill v. Pringle, Tex.Civ.App., 224 S.W. 2d 525 (writ ref.). On the contrary, we think the pleadings and the evidence tendered and the findings of the jury thereon bring appellee's case within the doctrine announced in Spradley v. Hall, Tex.Civ.App., 54 S.W.2d 1054 (no writ history); Davis v. Meckel, Tex.Civ.App., 57 S.W.2d 622 (no writ history); Miller v. Moravietz, Tex. Civ.App., 59 S.W.2d 242 (no writ history); Haby v. Hicks, Tex.Civ.App., 61 S.W.2d 871 (writ dis.); Sanchez v. Dixon, Tex. Civ.App., 96 S.W.2d 996 (no writ history); Hoffman v. Bynum, Tex.Civ.App., 101 S.W. 2d 600 (no writ history); Brown v. Kelley, Tex.Civ.App., 212 S.W.2d 834 (no writ history); Dortch v. Sherman County, Tex. Civ.App., 212 S.W.2d 1018 (no writ history); Rowan v. Pickett, Tex.Civ.App., 237 S.W.2d 734 (no writ history).

We have carefully considered each of the points raised by appellants in their brief and we are of the view that none presents error. Accordingly, each is overruled.

Finding no reversible error, the judgment of the trial court is in all things affirmed.